# *EXHIBIT A*

**In the Superior Court of the State of Arizona**

~~of   Maricopa~~

# CV2018-002465

MICHAEL K. JEANES, CLERK
BY *S Allen*  DEP
FILED

**18 MAR -8  PM 2: 27**

Is Interpreter Needed? ☐ Yes ☒ No
If yes, what language:

**CIVIL COVER SHEET- NEW FILING ONLY**
(Please Type or Print)

Plaintiff's Attorney  Limón-Wynn Law, PLLC

Attorney Bar Number  019174

Plaintiff's Name(s):  (List all)    Plaintiff's Address:           Phone #:        Email Address:

Justine Hurry, Limón-Wynn Law, PLLC, 1400 E Southern Ave.,  Ste 915, Tempe, 85282, 480.946.0680 mlimon-wynn@mlwlawaz.com

Scottsdale Capital Advisors Corporation (same address as above)

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s):  (List All)     S&P Global, Inc., S&P Global Market Intelligence, Inc.,  Kiah Lay Haslett, Zach Fox

(List additional defendants on page two and/or attach a separate sheet)

EMERGENCY ORDER SOUGHT:    ☐ Temporary Restraining Order    ☐ Provisional Remedy    ☐ OSC

☐ Election Challenge    ☐ Employer Sanction    ☐ Other _____
(Specify)

☐ RULE 8(h) COMPLEX LITIGATION APPLIES. Rule 8(h) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties.

(Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category.)

☒ THIS CASE IS ELIGIBLE FOR THE COMMERCIAL COURT UNDER EXPERIMENTAL RULE 8.1. (Maricopa County only.) Rule 8.1 defines a commercial case and establishes eligibility criteria for the commercial court. Generally, a commercial case primarily involves issues arising from a business contract or business transaction. However, consumer transactions are not eligible. A consumer transaction is one that is primarily for personal, family or household purposes. **Please review Rule 8.1 for a complete list of the criteria.** See http://www.superiorcourt.maricopa.gov/commercial-court/. You must check this box if this is an eligible commercial case. **In addition, mark the appropriate box below in the "Nature of Action" case category.** The words "commercial court assignment requested" must appear in the caption of the original complaint.

## NATURE OF ACTION

(Place an "X" next to the **one** case category that most accurately describes your primary case.)

**100 TORT MOTOR VEHICLE:**

☐ 101 Non-Death/Personal Injury
☐ 102 Property Damage
☐ 103 Wrongful Death

**110 TORT NON-MOTOR VEHICLE:**

☐ 111 Negligence
☐ 112 Product Liability – Asbestos
☐ 112 Product Liability – Tobacco
☐ 112 Product Liability – Toxic/Other
☐ 113 Intentional Tort

☐ 114 Property Damage
☐ 115 Legal Malpractice
☐ 115 Malpractice – Other professional
☐ 117 Premises Liability
☒ 118 Slander/Libel/Defamation
☐ 116 Other (Specify) _____

**120 MEDICAL MALPRACTICE:**

☐ 121 Physician M.D.    ☐ 123 Hospital
☐ 122 Physician D.O    ☐ 124 Other

Case No._____

## 130 CONTRACTS:

☐131 Account (Open or Stated)
☐132 Promissory Note
☐133 Foreclosure
☐138 Buyer-Plaintiff
☐139 Fraud
☐134 Other Contract (i.e. Breach of Contract)
☐135 Excess Proceeds-Sale
☐Construction Defects (Residential/Commercial)
      ☐136 Six to Nineteen Structures
      ☐137 Twenty or More Structures

## 150-199 OTHER CIVIL CASE TYPES:

☐156 Eminent Domain/Condemnation
☐151 Eviction Actions (Forcible and Special Detainers)
☐152 Change of Name
☐153 Transcript of Judgment
☐154 Foreign Judgment
☐158 Quiet Title
☐160 Forfeiture
☐175 Election Challenge
☐179 NCC-Employer Sanction Action
  (A.R.S. §23-212)
☐180 Injunction against Workplace Harassment
☐181 Injunction against Harassment
☐182 Civil Penalty
☐186 Water Rights (Not General Stream Adjudication)
☐187 Real Property
☐ Special Action against Lower Courts
  (See lower court appeal cover sheet in Maricopa)

☐194 Immigration Enforcement Challenge
  (§§1-501, 1-502, 11-1051)

## 150-199 UNCLASSIFIED CIVIL:

☐ Administrative Review
  (See lower court appeal cover sheet in Maricopa)
☐150 Tax Appeal
  (All other tax matters must be filed in the AZ Tax
  Court)
☐155 Declaratory Judgment
☐157 Habeas Corpus
☐184 Landlord Tenant Dispute- Other
☐190 Declaration of Factual Innocence
  (A.R.S. §12-771)
☐191 Declaration of Factual Improper Party Status
☐193 Vulnerable Adult (A.R.S. §46-451)
☐165 Tribal Judgment
☐167 Structured Settlement (A.R.S. §12-2901)
☐169 Attorney Conservatorships (State Bar)
☐170 Unauthorized Practice of Law (State Bar)
☐171 Out-of-State Deposition for Foreign Jurisdiction
☐172 Secure Attendance of Prisoner
☐173 Assurance of Discontinuance
☐174 In-State Deposition for Foreign Jurisdiction
☐176 Eminent Domain– Light Rail Only
☐177 Interpleader– Automobile Only
☐178 Delayed Birth Certificate (A.R.S. §36-333.03)
☐183 Employment Dispute- Discrimination
☐185 Employment Dispute-Other
☐195(a) Amendment of Marriage License
☐195(b) Amendment of Birth Certificate
☐163 Other _____
        (Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

☐Antitrust/Trade Regulation
☐Construction Defect with many parties or structures
☐Mass Tort
☐Securities Litigation with many parties
☐Environmental Toxic Tort with many parties
☐Class Action Claims
☐Insurance Coverage Claims arising from the above-listed case types
☐A Complex Case as defined by Rule 8(h) ARCP

**Additional Plaintiff(s)**

_____

_____

**Additional Defendant(s)**

_____

_____

MICHAEL K. JEANES, CLERK
BY  S Allen  DEP
FILED

18 MAR -8  PM 2:27

Monica A. Limón-Wynn (#019174)
LIMÓN-WYNN LAW, PLLC
Tempe City Center
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282-8008
Telephone: (480) 946-0680
Facsimile: (888) 893-9698
mlimon-wynn@mlwlawaz.com
Attorneys for Plaintiffs Justine Hurry and
Scottsdale Capital Advisors Corp.

Charles J. Harder (*pro hac vice* to be filed)
Jordan Susman (*pro hac vice* to be filed)
HARDER LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90067
Telephone: (424) 203-1600
CHarder@harderllp.com
JSusman@harderllp.com
Attorneys for Plaintiffs Justine Hurry and
Scottsdale Capital Advisors Corp.

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| JUSTINE HURRY, an individual; SCOTTSDALE CAPITAL ADVISORS CORP., an Arizona corporation, <br><br> Plaintiff, <br><br> v. <br><br> S&P GLOBAL, INC., a New York corporation; S&P GLOBAL MARKET INTELLIGENCE, INC., a New York corporation; KIAH LAU HASLETT, an individual; ZACH FOX, an individual; and DOES 1-10, inclusive, <br><br> Defendants. | No. CV2018-002465 <br><br><br> **CERTIFICATE OF COMPULSORY ARBITRATION** |

The undersigned certifies that she knows the dollar limits and any other limitations set forth by the local rules of practice for Maricopa County Superior Court, and further certifies that this case is **_NOT_** subject to compulsory arbitration, as provided by Rules 72 through 77 of the Arizona Rules of Civil Procedure.

DATED this 8th day of March, 2018.

LIMÓN-WYNN LAW, PLLC

By: _____
Monica A. Limón-Wynn
Tempe City Center
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282-8008
Attorneys for Plaintiffs Justine Hurry and
Scottsdale Capital Advisors Corp.

– and –

Charles J. Harder
Jordan Susman
HARDER LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Attorneys for Plaintiffs Justine Hurry and
Scottsdale Capital Advisors Corp.

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

MICHAEL K. JEANES
Clerk of the Superior Court
By Sena Allen, Deputy
Date 03/08/2018 Time 14:27:48
Description                    Amount
————— CASE# CV2018-002465 —————
CIVIL NEW COMPLAINT              322.00

TOTAL AMOUNT                     322.00
            Receipt# 26454924

Monica A. Limón-Wynn (#019174)
LIMÓN-WYNN LAW, PLLC
Tempe City Center
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282-8008
Telephone:  (480) 946-0680
Facsimile:  (888) 893-9698
mlimon-wynn@mlwlawaz.com
Attorneys for Plaintiffs Justine Hurry and
Scottsdale Capital Advisors Corp.

Charles J. Harder (*pro hac vice* to be filed)
Jordan Susman (*pro hac vice* to be filed)
HARDER LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90067
Telephone:  (424) 203-1600
CHarder@harderllp.com
JSusman@harderllp.com
Attorneys for Plaintiffs Justine Hurry and
Scottsdale Capital Advisors Corp.

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

JUSTINE HURRY, an individual;
SCOTTSDALE CAPITAL ADVISORS
CORP., an Arizona corporation,

                    Plaintiff,

v.

S&P GLOBAL, INC., a New York
corporation; S&P GLOBAL MARKET
INTELLIGENCE, INC., a New York
corporation; KIAH LAU HASLETT, an
individual; ZACH FOX, an individual;
and DOES 1-10, inclusive,

                    Defendants.

No.    CV2018-002465

**COMPLAINT**

**(Eligible for Commercial Court)**

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs Justine Hurry and Scottsdale Capital Advisors Corp. (jointly, "Plaintiffs") for their Complaint against Defendants S&P Global, Inc., S&P Global Market Intelligence, Inc., Kiah Lau Haslett, and Zach Fox, allege as follows:

**INTRODUCTION**

1.     Plaintiff Justine Hurry ("Ms. Hurry") is an accomplished and independently successful entrepreneur and businesswoman with ventures in a number of industries including finance, real estate, aerospace, defense, and technology.  Ms. Hurry also is a Strategic Advisor to plaintiff Scottsdale Capital Advisors Corp. ("SCA"), a well-regarded and very successful securities broker-dealer.

2.     In an effort to smear Plaintiffs' reputation and undermine their accomplishments, defendants S&P Global, Inc., S&P Global Market Intelligence, Inc. (collectively "S&P Global"), Kiah Lau Haslett, and Zach Fox (collectively, "Defendants") published an article on S&P Global's website on January 23, 2018 that contained numerous false, defamatory and highly misleading statements of and concerning Plaintiffs.  Among other things, the article falsely states that Ms. Hurry owns a broker-dealer of securities that was subject to a ruling for poor anti-money laundering compliance; falsely states that the Securities and Exchange Commission ("SEC") has brought actions against three companies purportedly owned by Ms. Hurry; and falsely portrays SCA as having had a FINRA ruling against it relating to anti-money laundering compliance.  The article also misleadingly (and paternalistically) attempts to tie Ms. Hurry to entities that are associated with her husband, and falsely and misleadingly attacks Ms. Hurry's integrity and good character in the process.

3.     Prior to publication of the story, Defendants informed Ms. Hurry of their intent to write a story, but refused to provide her with sufficient information about the contents of story on which to comment, thereby evidencing Defendants' negative agenda and reckless disregard for the truth.

- 2 -

4.     By this action, Plaintiffs seek to clear their good name and hold Defendants liable for the harm caused by their misconduct.

**THE PARTIES**

5.     Plaintiff Justine Hurry is an individual who resides in Maricopa County, Arizona.

6.     Plaintiff Scottsdale Capital Advisors Corp. is, and at all times relevant hereto was, a corporation organized under the laws of the State of Arizona, with its principal place of business in Maricopa County, Arizona.

7.     Upon information and belief, Defendant S&P Global, Inc. is, and at all times relevant hereto was, a corporation organized under the laws of the State of New York, with its principal place of business in New York, New York.

8.     Upon information and belief, Defendant S&P Global Market Intelligence, Inc. is, and at all times relevant hereto was, a corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

9.     Upon information and belief, Defendant Kiah Lau Haslett ("Haslett") is an individual who resides in Charlottesville, Virginia.

10.     Upon information and belief, Defendant Zach Fox ("Fox") is an individual who resides in Charlottesville, Virginia.

11.     Upon information and belief, the fictitiously-named defendants sued herein as Does 1 through 10, and each of them, are in some manner responsible or legally liable for the actions, events, transactions and circumstances alleged herein. The true names and capacities of such fictitiously-named defendants, whether individual, corporate, or otherwise, are presently unknown to Plaintiffs, and Plaintiffs will seek leave of Court to amend this Complaint to assert the true names and capacities of such fictitiously-named defendants when the same have been ascertained. For convenience, each reference to a named defendant herein shall also refer to Does 1 through 10. All defendants, including

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

S&P Global, Haslett, Fox, and those referred to herein as Does 1 through 10, are collectively referred to herein as "Defendants."

## JURISDICTION AND VENUE

12. This Court has jurisdiction of this matter under Ariz. Const. Art. VI, § 14 and A.R.S. § 12-123.

13. Venue in Maricopa County is proper under A.R.S. §§ 12-401(1) and (10).

## FACTS COMMON TO ALL CAUSES OF ACTION

### Justine Hurry

14. From humble roots, Justine Hurry has established herself as an independently successful entrepreneur who owns and/or operates a number of successful businesses including financial services firms, commercial and residential real estate ventures, retail operations, and ventures in aerospace, defense, technology, professional services, and innovative consumer goods.

15. Ms. Hurry grew up an only child in Pittsburgh, Pennsylvania. Her father was a millwright in a local factory and her mother was a homemaker. Ms. Hurry started work at the age of 16 in a fast food restaurant, and continued to work throughout college. Ms. Hurry graduated from Robert Morris University, where she received a Bachelor's Degree in Management.

16. Ms. Hurry moved to Arizona to work for a securities broker who sponsored her to take the Series 7 General Securities Representative Qualification Examination.

17. Upon passing the Series 7 exam, Ms. Hurry worked at Merit Capital, where she was paid slightly more than minimum wage. At Merit Capital, Ms. Hurry passed the Series 24 exam and was asked to supervise the office, where she learned the rules and procedures for supervising brokers, trading stocks, opening new accounts, and other aspects of investment banking and clearing stock certificates.

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

- 4 -

LIMON-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18.     Not content to work for someone else, Ms. Hurry identified opportunities and took risks.  Among those risks, in 2002, Ms. Hurry co-founded SCA, a full service broker-dealer focused on serving the microcap securities market, often referred to as the OTC market.  For SCA's first ten years, Ms. Hurry served as its Chief Executive Officer ("CEO").  During that period, SCA grew into one of the dominant companies in the OTC market, with more than $125 million worth of trades in 2015.  Ms. Hurry remains a Strategic Advisor to SCA.

19.     Ms. Hurry also is active in her community.  Among other causes, Ms. Hurry has helped raise money for the Phoenix Symphony, the American Heart Association, the Barrow Neurological Center for Brain Aneurysms and Strokes in Phoenix, and served on the grants committee for the local Catholic Leadership Circle.

20.     In 2017, Ms. Hurry expanded her business portfolio by acquiring an interest in Bank of Orrick, a small, Missouri-based bank with two branches.  This acquisition is subject to regulatory approval from the Federal Deposit Insurance Corp. ("FDIC").

### Defendants Refuse To Provide Any Substantive Information Regarding Their "Hit Piece" Article Prior To Publication

21.     On December 22, 2017, Defendant Kiah Lau Haslett sent an email to an attorney for Ms. Hurry, stating: "We are planning on writing a story about [Ms.] Hurry's application [to acquire a stake in the Bank of Orrick] and the fact that her and husband's [sic] enterprises had run into trouble with both FINRA and the SEC, and wanted to make sure we reached out to you for comment."  Haslett did not identify the thrust of the story, any reason why the story would discuss Ms. Hurry's husband, the names of the entities that purportedly had "trouble" with FINRA or the SEC, the nature of the purported "troubles," or even the names of the "entities" involved.

22.     That same day, Ms. Hurry's counsel responded to Haslett and requested that Haslett send for review a copy of the proposed story prior to publication, and warned Ms. Haslett about the dangers of publishing a story with false and defamatory statements.

23.   On January 18, 2018, Defendant Zach Fox sent an email to Ms. Hurry's counsel, stating that "S&P Global Market Intelligence plans to publish an article regarding Justine Hurry and John Hurry.   The article will reference Ms. Hurry's application to acquire a stake in the Bank of Orrick.   The article will also reference FINRA and SEC enforcement actions against Scottsdale Capital, Alpine Securities, Ms. Hurry and Mr. Hurry."   Like Defendant Haslett, Defendant Fox declined to state the nature of the story, the connection between Ms. Hurry's application to acquire a stake in the Bank of Orrick and Ms. Hurry's husband, or any specific allegations contained in the story.   Despite this lack of information, Fox gave Ms. Hurry one day to provide comment on the proposed story.

24.   Ms. Hurry's counsel responded to Fox by, again, requesting that Ms. Hurry be allowed to review any proposed story prior to publication in order to correct the facts and comment on the proposed statements.   Fox failed to honor that request.

25.   On January 18, 2018, after Defendants had refused for a third time to provide any details regarding the proposed story, Ms. Hurry's counsel sent Fox an email stating:

> As an initial matter, your failure to provide the proposed article, or **any** substantive information regarding its contents, for review and comment violates several provisions of the Society of Professional Journalists' Code of Ethics, including:
>
> - Ethical journalism strives to ensure the free exchange of information that is accurate, fair and thorough;
> - Journalists should verify information before releasing it.  Use original sources whenever possible;
> - Journalists should diligently seek subjects of news coverage to allow them to respond to criticism or allegations of wrongdoing;
> - Journalists should realize that private people have a greater right to control information about themselves than public figures and others who seek power, influence or attention;

LIMON-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

- 6 -

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

> My clients remain ready, willing and able to review and consider commenting upon any allegations your proposed story may make, but they must be given the opportunity to know what those allegations are and the context in which they are being made.  Your refusal to provide detailed information regarding the proposed story and allow my clients a meaningful opportunity to comment demonstrates your reckless disregard for the truth.

26.     Defendants remained obstinate and refused to provide any substantive information regarding the proposed story.  When Ms. Hurry's counsel explained to Fox: "Merely saying the article is 'about Ms. Hurry's application to acquire a stake in the Bank of Orrick' tells me nothing about the actual contents of the article," Fox responded: "We will put you down for a declined to comment."

27.     Ms. Hurry's counsel immediately informed Fox that any statement that she "declined to comment" would be false, because Ms. Hurry was provided no information on which to comment.

**Defendants Publish Their "Hit Piece" Article About Ms. Hurry And SCA**

28.     On January 23, 2018, Defendant S&P Global published an article written by Defendants Haslett and Fox, entitled "Regulator returns investor application to buy Bank of Orrick for 2nd time" (the "Article") at S&P Global's website: https://platform.mi.spglobal.com/web/client?auth=inherit#news/article?id=43251675&cdi d=A-43251675-12589.   A true and correct copy of the Article is attached hereto as **Exhibit 1** and incorporated by this reference.

29.     On the same date, Defendant Haslett published a link to the Article on her Twitter account.

30.     On January 24, 2018, Defendant Haslett published a second link to the Article on her Twitter account, adding the following description: "Check out our story about a prospective bank investor who co-owns a broker/dealer that was subject to a ruling for poor anti-money-laundering compliance: [Article hyperlink] The application was returned a second time by the @FDICgov."   A true and correct copy of the postings

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

on Haslett's Twitter account are attached hereto as **Exhibit 2** and incorporated by this reference.

31.     The Article and Haslett's Twitter posts contain numerous statements that are defamatory, outright false and/or portray Plaintiffs in a false light, including:

a.    **False Statement #1:** "The Federal Deposit Insurance Corp. has for the second time returned an application from a financial services director, Justine Hurry, seeking to buy Bank of Orrick." In truth, Ms. Hurry is not seeking to buy Bank of Orrick; Ms. Hurry only seeks to purchase an interest in Bank of Orrick.

b.    **False Statement #2:** "Hurry co-owns a broker/dealer that was subject to a ruling for poor anti-money-laundering compliance." In truth, Ms. Hurry does not co-own any broker/dealers that were subject to a ruling for poor anti-money-laundering compliance.

c.    **False Statement #3:** "Applications can be returned for technical difficulties or as an indication regulators are lukewarm in the proposal."
This statement is baseless and its juxtaposition with statements regarding Ms. Hurry portrays her in a false light.

d.    **False Statement #4:** "While the FDIC does not have publicly available statistics, the Federal Reserve received 554 applications and returned two of them in the first six months of 2017." This statement misleadingly compares the FDIC's return of one application to Federal Reserve statistics. Moreover, the statement neglects to mention that the Federal Reserve reported that 28

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

applications (5% of total) were withdrawn in the relevant time frame. This statement therefore portrays Ms. Hurry in a false light.

e.  **False Statement #5:** "'One of the statutory factors that a regulator has to take into account is the background and integrity of the applicant. ... That figures prominently in the regulatory review process,' said Charles Horn, a Washington, D.C.-based attorney at Morgan Lewis & Bockius LLP who focuses on bank regulatory compliance. Horn spoke generally about the Change in Bank Control Act, a law that governs bank acquisitions, not specifically about Hurry's application."

This statement regarding the "integrity of applicant" is designed to, and in fact does, portray Ms. Hurry in a false light, as her integrity has never been the subject of any ruling by FINRA, the SEC or other regulatory authority.

f.  **False Statement #6:** "When S&P Global Market Intelligence requested comment from Hurry, her lawyer responded but did not provide an on-the-record statement."

In truth, Defendants refused to provide Ms. Hurry's attorneys with sufficient information about the Article on which to comment.

g.  **False Statement #7:** "The U.S. Securities and Exchange Commission has brought several cases against clients of the three Hurry-owned companies, including one with allegations against two Scottsdale Capital employees."

In truth, Ms. Hurry does not own three companies against which the SEC has brought cases against clients.

- 9 -

LIMON-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

h.   **False Statement #8:** "While these cases do not allege any wrongdoing by the Hurrys individually, regulators cited these cases when filing separate enforcement actions regarding inadequate anti-money-laundering compliance at Scottsdale [SCA] and Alpine."

In truth, SCA has not been accused of inadequate anti-money laundering compliance.

i.   **False Statement #9:** "Lawrence White, an economics professor at New York University, said this history could affect Justine Hurry's application to buy Bank of Orrick. 'All of these things raise this "suitability and good character" type of question. If somehow, one penny stock pump and dump happened, the individual might say 'That was a mistake and I learned from my mistake,'' White said. "Fool me once, shame on you. Fool me twice, shame on me. More than once, I think, is a serious flag.""

This statement is based upon, and therefore repeats, a false history regarding Ms. Hurry and portrays her in a false light.

32.   On February 1, 2018, Ms. Hurry's counsel sent a letter to Defendants identifying the foregoing false statements in the Article, and demanding that Defendants remove each one and publish a retraction, correction, and apology as to each of those statements. Defendants have failed and refused to comply with Plaintiffs' demand.

33.   The false, defamatory and highly misleading statements identified, written and published by Defendants, about Plaintiffs, have caused and are continuing to cause Plaintiffs tremendous economic harm and damage to their respective reputations. Accordingly, Plaintiffs had no alternative but to file this lawsuit for compensatory damages, punitive damages, and injunctive relief, as explained more fully herein.

- 10 -

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

## COUNT I
### Defamation
### (All Plaintiffs against All Defendants)

34.     Plaintiffs incorporate by reference all of the preceding paragraphs as though fully restated herein.

35.     Defendants wrote and published the following defamatory statements of fact about Plaintiffs in the Article:

        a.     Ms. Hurry "co-owns a broker/dealer that was subject to a ruling for poor anti money-laundering compliance";

        b.     "The U.S. Securities and Exchange Commission has brought several cases against clients of the three Hurry-owned companies";

        c.     Financial regulators have filed enforcement action(s) regarding inadequate anti-money laundering compliance at SCA

(collectively, the "Defamatory Statements").

36.     The Defamatory Statements are false.

37.     The Defamatory Statements have caused Plaintiffs to be damaged.

38.     Defendants have refused to retract, correct or apologize for the Defamatory Statements after being given notice and ample time to do so.

39.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to their reputation and business interests in an amount to be determined at trial, and in an amount not less than the jurisdictional minimum of this Court. Plaintiffs' damages may also be presumed because the Defamatory Statements impute to Plaintiffs offenses regarded by public opinion as involving moral turpitude, and unfitness for the proper conduct of their lawful business, trade, and profession.

40.     Plaintiffs are private figures for purposes of a defamation analysis.

41.     Notwithstanding Plaintiffs' status as private figures, at the time the Defamatory Statements were published, Defendants knew the Defamatory Statements

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

1    were false and/or acted in reckless disregard of whether the Defamatory Statements were

2    true or false.  As such, in addition to compensatory damages and/or presumed damages,

3    Plaintiffs are entitled to an award of punitive damages in an amount to be determined at

4    trial.

5

6                              **COUNT II**
                     **Invasion of Privacy: False Light**
7                    **(Ms. Hurry against All Defendants)**

8        42.    Plaintiffs incorporate by reference all of the preceding paragraphs as though

9    fully restated herein.

10       43.    Defendants published the following statements about Ms. Hurry that portray

11   her in a false light and create a false impression about Ms. Hurry:

12              a.    Ms. Hurry lacks "integrity";

13              b.    The SEC has brought cases against clients of three companies owned

14                   by Ms. Hurry;

15              c.    Ms. Hurry lacks "good character";

16              d.    Ms. Hurry has been involved in "pump-and-dumps" of penny stocks

17   (collectively, the "False Light Statements").

18       44.    The impression created about Ms. Hurry by the False Light Statements

19   would be highly offensive to a reasonable person.

20       45.    As a direct and proximate result of Defendants' conduct, Ms. Hurry has

21   suffered damages to her reputation and business interests, and emotional distress in an

22   amount to be determined at trial, and in an amount not less than the jurisdictional

23   minimum of this Court.

24       46.    Ms. Hurry is a private figure for purposes of a false light analysis.

25       47.    Notwithstanding Ms. Hurry's status as a private figure, Defendants knew

26   that the False Light Statements would create false impressions about Ms. Hurry, and/or

27   acted recklessly about whether the False Light Statements would create a false impression

28   about Ms. Hurry.  As such, in addition to compensatory damages and/or presumed

damages, Ms. Hurry is entitled to an award of punitive damages in an amount to be determined at trial.

## DEMAND FOR JURY

Plaintiffs hereby demand a trial by jury for all claims asserted in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Justine Hurry and Scottsdale Capital Advisors Corp. request that judgment be entered against Defendants S&P Global, Inc., S&P Global Market Intelligence, Inc., Kiah Lau Haslett, and Zach Fox, and each of them, jointly and severally, as follows:

A. For compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial;

B. For pre- and post-judgment interest on the foregoing sum at the highest lawful rate from entry of judgment until paid in full;

C. For an injunction enjoining further publication of the Defamatory Statements and the False Light Statements; and

D. For Plaintiffs to be awarded all other and further relief as this Court may deem appropriate, proper and just.

DATED this 8th day of March, 2018.

LIMÓN-WYNN LAW, PLLC

By: _____
Monica A. Limón-Wynn
Tempe City Center
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282-8008
Attorneys for Plaintiffs Justine Hurry and
Scottsdale Capital Advisors Corp.

– and –

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

Charles J. Harder
Jordan Susman
HARDER LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Attorneys for Plaintiffs Justine Hurry and
Scottsdale Capital Advisors Corp.

LIMÓN-WYNN LAW, PLLC
1400 East Southern Avenue, Suite 915
Tempe, Arizona 85282
(480) 946-0680

{00088441:6}

# EXHIBIT 1

# EXHIBIT 1

# Regulator returns investor application to buy Bank of Orrick for 2nd time EXCLUSIVE

**Tuesday, 23 January 2018 11:33 AM ET**      ⎡ A + ⎤   ⎡ A - ⎤

By Zach Fox and Kiah Lau Haslett

The Federal Deposit Insurance Corp. has for the second time returned an application from a financial services director, Justine Hurry, seeking to buy Bank of Orrick (/web/client?auth=inherit#company/profile? KeyProductLinkType=2&id=1016326).

The agency declined to reveal the reason behind its decision to return the applications. Hurry co-owns a broker/dealer that was subject to a ruling for poor anti-money-laundering compliance.

Hurry applied with the FDIC in late 2017 to acquire a controlling stake in the Bank of Orrick, a small Missouri bank. The regulator returned Hurry's initial application, and she subsequently refiled (/web/client? auth=inherit#news/article?KeyProductLinkType=2&id=43091828) on Dec. 22, 2017. The second application included some changes, such as the addition of a name for a chairman of the bank's board. The FDIC again returned the application on Jan. 12, FDIC spokeswoman Julianne Breitbeil told S&P Global Market Intelligence on Jan. 22. The FDIC has no application pending for Bank of Orrick, but an applicant can refile.

The FDIC declined to comment on why it returned the applications. A returned application is neither approved nor denied. Applications can be returned for technical deficiencies or as an indication regulators are lukewarm on the proposal. Returns are relatively rare: While the FDIC does not have publicly available statistics, the Federal Reserve received 554 applications and returned two of them in the first six months of 2017.

Financial regulators have in the past filed multiple enforcement actions against Hurry's companies, raising the prospect that her bank application could receive significant scrutiny. However, Hurry herself has not been named as a defendant in the enforcement actions with the largest monetary fines.

"One of the statutory factors that a regulator has to take into account is the background and integrity of the applicant. ... That figures prominently in the regulatory review process," said Charles Horn, a Washington, D.C.- based attorney at Morgan Lewis & Bockius LLP who focuses on bank regulatory compliance. Horn spoke generally about the Change in Bank Control Act, a law that governs bank acquisitions, not specifically about Hurry's application.

When S&P Global Market Intelligence requested comment from Hurry, her lawyer responded but did not provide an on-the-record statement. Bank of Orrick CEO and President Douglas Ayers declined to comment, and Chairman William Scott Clark did not respond to a request for comment.

Bank of Orrick has two branches both in Orrick, Mo., a town about 25 miles from Kansas City, Mo. with a population of around 800. Over the most recent four quarters for which results are available, the bank's return on average assets has ranged from a high of 0.12% in the fourth quarter of 2016 to a low of 0.00%, or $0 in net income, in the third quarter of 2017.

Hurry has been involved in selling securities for more than two decades, going to work for a brokerage in 1996, according to records maintained by the Financial Industry Regulatory Authority, or FINRA, a self-regulatory organization that covers U.S. broker/dealers. FINRA is a non-governmental organization that creates and

enforces rules for members based on federal laws. After working at a few different brokerages, Hurry in 2002 founded Scottsdale Capital Advisors in Scottsdale, Ariz., along with her husband, John Hurry, according to the company's website.

John Hurry would go on to acquire Alpine Securities Corp. in 2011, and in 2013 he established an offshore financial institution, Cayman Securities Clearing and Trading SECZ, in the Cayman Islands, according to regulatory actions.

The U.S. Securities and Exchange Commission has brought several cases against clients of the three Hurry-owned companies, including one with allegations against two Scottsdale Capital employees. According to the SEC complaints, the clients conducted different penny stock pump-and-dump schemes using accounts at Scottsdale and Alpine.

While these cases do not allege any wrongdoing by the Hurrys individually, regulators cited these cases when filing separate enforcement actions regarding inadequate anti-money-laundering compliance at Scottsdale and Alpine. FINRA called Scottsdale's weak compliance structure after multiple frauds by its clients "aggravating." Lawrence White, an economics professor at New York University, said this history could affect Justine Hurry's application to buy Bank of Orrick.

"All of these things raise this 'suitability and good character' type of question. If somehow, one penny stock pump and dump happened, the individual might say 'That was a mistake and I learned from my mistake,'" White said. "Fool me once, shame on you. Fool me twice, shame on me. More than once, I think, is a serious flag."

## A history of enforcement actions

In June 2017, the SEC sued Alpine Securities, arguing that the company failed to properly submit thousands of suspicious activity reports, or SARs. Alpine's "deficient SAR filings facilitated illicit actors' evasion of scrutiny by U.S. regulators and law enforcement, and provided them with access to the markets they might otherwise have been denied," the SEC alleged in its complaint. The SEC's complaint is still being litigated in court, with a mediation session scheduled for Feb. 23.

Also in June 2017, FINRA issued a ruling against Scottsdale Capital and John Hurry. FINRA barred John Hurry from any securities activities and levied a $1.5 million fine against Scottsdale Capital. There were also sanctions for the brokerage's president and chief compliance officer. Similar to the SEC's complaint, FINRA alleges that John Hurry's poor anti-money-laundering processes enabled unlawful securities sales that "were used to facilitate fraud and manipulation."

"[John] Hurry's violation of his duty to observe high standards of commercial honor and just and equitable principles of trade was purposeful and egregious," a panel of FINRA officers ruled. "These two qualities lead us to conclude that Hurry is a threat to investors and the integrity of the markets." The case has been appealed to FINRA's internal appeal board, wrote Angelita Williams, a FINRA spokesperson, in a Jan. 2 email.

Notably, Justine Hurry was not personally named as a defendant in FINRA's action against Scottsdale Capital nor the SEC's action against Alpine Securities.

FINRA's "Broker Check" tool, an online database of brokers and firms, shows Justine Hurry as a registered broker at Scottsdale Capital until June 2016, and the firm's FINRA page does not list her as a director. However, Scottsdale Capital's website states Justine Hurry continues to serve as a director and strategic adviser. FINRA's June 2017 decision notes Justine Hurry is a co-owner of Scottsdale Capital. It also notes that the firm paid more than $6 million in directors' compensation in 2014. "Since John and Justine Hurry were the Firm's only directors, this expense presumably was paid to them," the decision states.

And Justine Hurry appeared to lead the brokerage firm during its early days. The corporation's annual report filed in 2002 with the state of Arizona lists Justine Hurry as the firm's president and sole director. John Hurry is not mentioned on the form. FINRA did assess a $7,500 fine and a 40-day suspension against her in 2011, alleging that she filed inaccurate or incomplete suspicious activity reports. Justine Hurry consented to the sanctions without admitting or denying the allegations.

In addition to the aforementioned cases, FINRA has levied four smaller actions against Scottsdale and two against Alpine. Whether the histories of Scottsdale Capital and Alpine Securities will affect Justine Hurry's application to buy Bank of Orrick remains to be seen.

S&P Global Market Intelligence, 55 Water Street, New York, NY 10041

Site Map

Legal Disclaimer (http://marketintelligence.spglobal.com/home/legal-disclaimer.html)
Exchange Disclaimer & Notice (http://marketintelligence.spglobal.com/disclaimers/exchange-disclaimers-notices)
Site content and design Copyright © 2018, S&P Global Market Intelligence.

# EXHIBIT 2

# EXHIBIT 2

 Home    Moments                    from:khaslett since:2018-01-23 u... 🔍     Have an account? **Log in ▾**

## from:khaslett since:2018-01-23 until:2018-01-25

Top    Latest    People    Photos    Videos    News    Broadcasts

---

**Search filters** · Hide

From anyone ▼

Anywhere ▼

All languages ▼

Advanced search

## New to Twitter?

Sign up now to get your own personalized timeline!

**Sign up**

## Worldwide trends

**#OTFiesta**
92.1K Tweets

**Tottenham**
158K Tweets

**#InternetFriendsDay**
32.2K Tweets

**Juventus**
149K Tweets

**#العبد_الصالح**
27.7K Tweets

**#العبد_الصالح#**
314K Tweets

**Higuain**
105K Tweets

**#PrincipeLibero**
7,731 Tweets

**Kane**
110K Tweets

**Aurier**
27.7K Tweets

© 2018 Twitter  About  Help Center  Terms
Privacy policy  Cookies  Ads info

---

**Kiah Lau Haslett** @khaslett · Jan 24
When you have an entire window of tabs that are nothing but @BoxHQ links, and then the second window that Box makes you open.

♡    ⟲    ♡ 1

**Kiah Lau Haslett** @khaslett · Jan 24
Check out our story about a prospective bank investor who co-owns a broker/dealer that was subject to a ruling for poor anti-money-laundering compliance: platform.mi.spglobal.com/web/client?art... The application was returned a second time by the @FDICgov

♡    ⟲    ♡

**Kiah Lau Haslett** @khaslett · Jan 24
Tax reform hasn't lowered bank seller expectations, according to Prosperity's David Zalman: platform.mi.spglobal.com/web/client?aut...

♡    ⟲ 2    ♡

**Kiah Lau Haslett** @khaslett · Jan 24
I don't understand why a flight from JFK to UVF (St. Lucia) that connects in CLT is $458, but that second leg that starts in CLT to UVF as a direct flight is like $900.

♡    ⟲    ♡

**Kiah Lau Haslett** @khaslett · Jan 24
My capacity to be grossed out by male behavior surprises even me:

**Men Only: Inside the charity fundraiser where hostesses are put on...**
FT investigation finds groping and sexual harassment at secretive black-tie dinner
ft.com

♡    ⟲ 3    ♡

**Kiah Lau Haslett** @khaslett · Jan 23
The @FDICgov has returned Justine Hurry's application to buy Bank of Orrick for 2nd time. Our story about the application: platform.mi.spglobal.com/web/client?aut...

♡    ⟲    ♡