# *EXHIBIT J*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CV 2575

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| Plaintiff, | : | |
| v. | : | 13 Civ. |
| GIBRALTAR GLOBAL SECURITIES, INC., and WARREN A. DAVIS | : | |
| Defendants. | : | |

RECEIVED
APR 18 2013
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT

Plaintiff, the Securities and Exchange Commission (the "Commission"), alleges:

## NATURE OF THE ACTION

1.  Beginning as early as March 2008 and continuing through August 2012, Gibraltar

Global Securities, Inc. ("Gibraltar"), a Bahamian broker-dealer wholly owned by its president,

Warren A. Davis ("Davis"), and Davis personally, unlawfully operated as broker-dealers in the

United States. Through its website, Gibraltar solicited prospective United States customers

("U.S. customers") by advertising a broad range of brokerage services commonly provided by

online broker-dealers. As an additional inducement to U.S. customers, Gibraltar's website

advertised the formation of offshore international business corporations ("IBCs") with nominee

officers and directors that enabled U.S. customers to trade anonymously, "without paying taxes

on [their] profits."

2.  Gibraltar attracted U.S. customers seeking to sell shares of low-priced, thinly

traded microcap issuers. Gibraltar routinely accepted deposits of microcap stocks from U.S.

promoters and brokers, arranged for the transfer agent to re-title the stock certificates in

Gibraltar's name, and deposited the shares into various securities accounts Gibraltar maintained

at broker-dealers located in the United States ("U.S. brokers"). When Gibraltar customers instructed Gibraltar to sell the microcap stocks, Gibraltar placed corresponding sell orders with U.S. brokers. After the sales were executed, Gibraltar instructed the U.S. brokers to wire the sale proceeds back to its bank account maintained at the Royal Bank of Canada in the Bahamas. Gibraltar then wired the sale proceeds (less Gibraltar's 2-3% commission) back to its U.S. customers. From approximately March 2008 through August 2012, Gibraltar sold approximately $100 million of low-priced microcap securities on behalf of U.S. customers.

3.   In addition to operating as an unregistered broker-dealer in the United States, Gibraltar and Davis participated in the unlawful unregistered offering and sale of over 10 million shares of Magnum d'Or, (symbol "MDOR") on behalf of U.S. customers for proceeds of over $11 million.

4.   By virtue of the conduct alleged herein, defendants Gibraltar and Davis violated Section 15(a)(1) of the Exchange Act of 1934 (failure to register with the Commission as a broker-dealer) [15 U.S.C. § 78o] and Sections 5(a) and (c) of the Securities Act of 1933 (offering or sale of securities not subject to a registration statement and not exempt from registration) [15 U.S.C. §§ 77e(a) and (c)].

## JURISDICTION AND VENUE

5.   This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77v(a)] and Sections 21(d)(1), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(1), 78u(e) and 78aa]. Venue lies in this Court pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions and courses of business alleged herein occurred within the Southern District of New

York.  For example, Gibraltar maintained securities accounts within the Southern District of

New York.  Gibraltar also deposited shares with depository facilities located within the Southern

District of New York.

      6.   The defendants have, directly or indirectly, made use of the means or

instrumentalities of interstate commerce, or of the mails, or the facilities of a national

securities exchange in connection with the transactions, acts, practices and courses of business

alleged herein.

      7.   The defendants will, unless enjoined, continue to engage in the acts, practices

and courses of business alleged herein, or in transactions, acts, practices and courses of

business of similar purport and object.

### DEFENDANTS

      8.   Gibraltar Global Securities, Inc., is a broker-dealer domiciled in the

Commonwealth of the Bahamas.  Since March 2005, Gibraltar has been registered with the

Securities Commission of the Bahamas.  During the relevant period, Gibraltar employed

approximately four representatives.  At all times relevant to this complaint, Gibraltar was

engaged in the business of effecting transactions for the accounts of others, and made use of the

mails and other means and instrumentalities of interstate commerce to effect transactions in, or to

induce, or attempt to induce, the purchase or sale of securities.  Gibraltar has never been

registered with the Commission as a broker or a dealer.

      9.   Warren Anthony Akinwande Davis, age 38, is a citizen of the

Commonwealth of the Bahamas.  Davis is the founder, president and sole owner of Gibraltar.

At all times relevant to this complaint, Davis, directly or indirectly, controlled Gibraltar's

activities.  He was its sole owner, and established accounts on Gibraltar's behalf in the United

States.  Davis also was authorized to trade on Gibraltar's behalf and authorized other Gibraltar

employees to place trades in the United States. Davis has never been registered with the Commission as a broker or a dealer.

## OTHER RELEVANT ENTITIES

10. **Magnum d'Or** ("Magnum") is a Nevada corporation formerly headquartered in Fort Lauderdale, Florida, with its principal place of business located in Henderson, Nevada. In February 2012, the United States District Court for the Southern District of Florida entered a final order in favor of the Commission (*SEC v. Magnum d'Or Resources, Inc., et al.* 11-cv-60920) enjoining Magnum from further violations of Sections 5(a), 5(c) and 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]. The company also was ordered to pay disgorgement of over $7.7 million, representing the proceeds of the unregistered offer and sale of millions of shares of the company's stock through Gibraltar. On April 29, 2011, the Commission suspended trading in Magnum's shares pursuant to Section 12(k) of the Exchange Act [15 U.S.C. § 77l(k)]. The Commission de-registered Magnum's securities pursuant to Section 12(j) on August 3, 2011 [15 U.S.C. § 77l(j)].

11. **Dwight Flatt**, age 29, is a resident of Delray Beach, Florida. In the *Magnum d'Or* complaint, the Commission charged Flatt with acting as a nominee shareholder in the scheme to circumvent the registration provisions alleged in the above-referenced matter. Flatt consented to an injunction against further violations of Sections 5(a) and 5(c) of the Securities Act. Flatt was also barred from participating in penny stock offerings pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and enjoined from owning, receiving or purchasing Form S-8 stock . In November 2012, the District Court for the Southern District of Florida entered a final judgment ordering Flatt to pay disgorgement and interest of over $2.4 million and a civil penalty of $2.2 million.

12. **David Della Sciucca, Jr.**, age 27, is a resident of Fort Lauderdale, Florida. In the *Magnum d'Or* complaint, the Commission charged Della Sciucca with acting as a nominee shareholder in the scheme to circumvent the registration provisions alleged in the above-referenced matter. Della Sciucca consented to an injunction against further violations of Sections 5(a) and 5(c) of the Securities Act. Della Sciucca was also barred from participating in penny stock offerings and from owning, receiving or purchasing Form S-8 stock. In November 2012, the District Court for the Southern District of Florida entered a final judgment ordering Della Sciucca to pay disgorgement and interest of $725,041 and a civil penalty of $665,141.

13. **Shannon Allen**, age 36, is a resident of Miami, Florida. Allen was a nominee shareholder in the scheme to circumvent the registration provisions alleged in the above-referenced matter. In the *Magnum d'Or* action, the Commission accepted Allen's offer of settlement in which he consented to an injunction against further violations of Sections 5(a) and 5(c) of the Securities Act and other relief.

14. Flatt, Allen and Della Sciucca together (the "Flatt Nominees") deposited over 11 million shares of Magnum d'Or stock into their accounts a Gibraltar.

## FACTUAL ALLEGATIONS

### GIBRALTAR AND DAVIS SOLICITED BROKER-DEALER CUSTOMERS IN THE UNITED STATES WITHOUT BEING REGISTERED AS BROKER-DEALERS

15. Throughout the period relevant to this complaint, Gibraltar maintained a website located at http://www.ggsibahamas.com. Gibraltar's website described itself as a broker-dealer registered with the Bahamian Securities Commission that offered "offshore" brokerage services with commissions comparable to those on the "mainland." Gibraltar's website solicited prospective customers, including U.S. customers, to establish securities accounts by offering a

variety of brokerage services, such as:  (i) online trading in stocks, bonds and options; (ii) 24

hour account access; (iii) efficient execution; and (iv) financial news feeds.

16.   On its website, Gibraltar stated that "Using a Gibraltar offshore brokerage

account will enable you to trade on most stock exchanges in the world at a cost equivalent to that

incurred using mainland brokers, without paying taxes on the profits."  Gibraltar's website

promised prospective customers an "extra layer of confidentiality" to protect assets from

"government seizures or frivolous divorce settlements."

17.   Gibraltar's website: (1) showed price-volume graphs solely for U.S. markets; (2)

was written only in English; (3) charged fees in U.S. dollars—with no provision for currency

exchange; and (4) referenced transfers of shares through a United States depository institution

(and not non-U.S. depositories).  According to Hupso.com, an internet website analyzer,

Gibraltar attracted over 2,200 visitors per day.  According to webstatsdomain.com,

approximately 79% of the Gibraltar's traffic derived from Canada and 21% from the United

States.

18.   Gibraltar's website contained no disclaimers advising prospective customers that

it would not service U.S. investors and Gibraltar provided brokerage services to numerous

entities and individuals from the United States.

19.   Gibraltar also solicited prospective customers, including U.S. customers, by

offering them vehicles by which they could trade anonymously.  In this regard, Gibraltar's

website offered to form IBCs with nominee officers and directors.  According to Gibraltar,

trading through IBCs with nominee directors and officers provided an added layer of

confidentiality which allowed customers to protect their identity.

6

20.  To sell securities in the United States, Gibraltar created numerous accounts at U.S. brokers.   In order to enable U.S. customers to avoid paying taxes on proceeds from the account, Davis submitted false IRS W8-BEN withholding forms to the U.S. brokers.  The withholding forms Davis submitted falsely certified that Gibraltar was the beneficial owner of the income relating to the securities accounts, and that the beneficial owner was not a U.S. person.   In purported reliance on the false withholding certificates, U.S. brokers did not withhold taxes because Gibraltar was a foreign entity exempt from withholding pursuant to treaty.

21.   Throughout the period 2008 through 2012, Gibraltar accepted shares of low-priced, thinly-traded stock from customers, including U.S. customers, and sold them through accounts maintained at U.S. brokers.   To facilitate the sales, Gibraltar arranged to have the share certificates re-registered in its name.  In many instances, Gibraltar titled the certificates in its name, but included the abbreviation "fbo" followed by the name of the particular customer to show that Gibraltar held the shares "for the benefit of" U.S. customers.

22.   After the share certificates were re-titled in its name, Gibraltar deposited them with U.S. brokers.  U.S. customers then placed sell orders with Gibraltar through its website, telephonically or through e-mail.  Gibraltar then followed its customers' orders by placing corresponding sell orders with its U.S, brokers who sold the shares on the open market.

23.   After the shares were sold on behalf of U.S. customers, Gibraltar instructed the U.S. brokers to wire the net proceeds to its bank account maintained at the Royal Bank of Canada in the Bahamas.  Gibraltar then deducted commissions of between 2-3% of the net proceeds and forwarded the remaining proceeds back to its U.S. customers via wire transfer.

24. Neither Gibraltar nor Davis at any time registered with the SEC as a broker or dealer as is required for individuals and firms seeking to engage in securities transactions for U.S. customers. As the person who controlled Gibraltar, Davis is liable for Gibraltar's failure to register as well as his own.

## GIBRALTAR AND DAVIS PARTICIPATED IN UNREGISTERED OFFERINGS AND SALES OF SECURITIES

25. Beginning on or about November 2008 through approximately September 2009, the Flatt Nominees deposited over 11 million shares of Magnum d'Or stock into their accounts at Gibraltar. Gibraltar and Davis knew or should have known that the Flatt Nominees acquired the shares directly from the issuer, Magnum d'Or.

26. After the Magnum share certificates were retitled in Gibraltar's name, Davis (and other Gibraltar employees) deposited the shares into Gibraltar's accounts at U.S. brokers by mail.

27. As set forth below, throughout the period November 2008 through December 2009 Gibraltar and Davis sold over 10 million shares of Magnum d'Or in over 600 transactions through four U.S brokers raising proceeds of approximately $11.4 million.

| Broker Dealer | Date Range | Shares MDOR sold | Sales Proceeds |
|---|---|---|---|
| Oppenheimer & Co. | 11/28/08 to 4/28/09 | 969,822 | $    857,406 |
| Noble Trading | 12/9/08 to 8/3/09 | 6,310,094 | $ 6,377,002 |
| Alpine Securities Corp. | 8/31/09 to 12/15/09 | 2,121,725 | $ 2,389,777 |
| Scottsdale Capital Advisers | 9/8/09 to 12/10/09 | 1,315,419 | $ 1,760,402 |
| Totals | | 10,717,060 | $11,384,589 |

28. There was no registration statement filed with the Securities and Exchange Commission with respect to any of the sales in Magnum d'Or effected by Gibraltar and Davis on behalf of the Flatt Nominees.  Nor did the issuance qualify for any exemptions from registration.

29. After the sales of Magnum d'Or were executed, Gibraltar instructed the U.S. brokers to wire the sales proceeds from its accounts located in various locations in the United States to its account located at the Royal Bank of Canada in the Bahamas.  Thereafter Gibraltar wired approximately $7.175 million directly back to Magnum d'Or.

## FIRST CLAIM FOR RELIEF

**Gibraltar and Davis, for Himself and as the Controlling Person of Gibraltar, Unlawfully Operated as Broker/Dealers Trading Securities for U.S. Customers Without Registering With the Commission in Violation of Sections 20(a) and 15(a)(1) of the Exchange Act [15 U.S.C. §§ 78t and 78o]**

30.  Paragraphs 1 through 29 are re-alleged and incorporated by reference.

31.  Defendants Gibraltar and Davis have, by engaging in the conduct set forth above, made use of the mails and means or instrumentalities of interstate commerce to effect transactions in, and induced and attempted to induce the purchase or sale of, securities (other than exempted securities or commercial paper, bankers' acceptances, or commercial bills) without being registered with the Commission in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)] and without complying with any exemptions promulgated pursuant to Section 15(a)(2) [15 U.S.C.§ 78o(a)(2)]

32.  By reason of the foregoing, Gibraltar and Davis, for himself and as control person over Gibraltar, directly and indirectly, violated Section 15(a) of the Exchange Act, and are likely to commit such violations in the future unless enjoined from doing so.

## SECOND CLAIM FOR RELIEF

### Gibraltar and Davis Unlawfully Offered and Sold Unregistered Magnum d'Or Securities in Violation of Section 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)]

33. The Commission hereby incorporates Paragraphs 1 through 31 by reference.

34. Defendants Gibraltar and Davis have, by engaging in the conduct set forth above, directly or indirectly:

a.   Made use of the means or instruments of transportation or communication in interstate commerce or of the mails, offered to sell or sold securities;

b.   Carried or caused such securities to be carried through the mails or in interstate commerce, by means or instruments of transportation, for the purpose of sale or delivery after sale; although

c.   No registration statement was filed with the Commission or was in effect with respect to the securities offering and sale by defendants prior to the offer or sale of these securities and no exemption from registration applied.

35. By reason of the foregoing, Defendants have directly or indirectly violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)], and unless restrained and enjoined will continue to violate these provisions.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a judgment:

## I.

Permanently restraining and enjoining each of the defendants, their agents, servants, employees, attorneys in-fact, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 15(a) of the Exchange Act [15 USC 78o], and Section 5 of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## II.

Ordering Defendants to disgorge all profits realized from the unlawful trading alleged herein, with prejudgment interest.

## III.

Ordering Defendants to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

## IV.

Granting such other relief as this Court may deem just and appropriate.

Dated:  April 18, 2013

Respectfully submitted,

James A. Kidney JK5830
Gerald Hodgkins
Douglas C. McAllister
Robert A. Giallombardo (RG7912)

Attorneys for Plaintiff
Securities and Exchange Commission
Division of Enforcement
100 F Street, N.E.
Washington, D.C. 20549-1040
Telephone: (202) 551-4441 (Kidney)
Facsimile:   (202) 772-9282 (Kidney)
KidneyJ@sec.gov