Monica A. Limón-Wynn (#019174)
LIMÓN-WYNN LAW, PLLC
Tempe City Center
1400 East Southern Avenue, Suite 915
Tempe, Arizona  85282-8008
Telephone:  (480) 946-0680
Facsimile:  (888) 893-9698
mlimon-wynn@mlwlawaz.com

Charles J. Harder  (admitted *pro hac vice*)
Jordan Susman (admitted *pro hac vice*)
HARDER LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90067
Telephone:  (424) 203-1600
CHarder@harderllp.com
JSusman@harderllp.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justine Hurry, an individual; Scottsdale Capital Advisors Corp., an Arizona corporation,<br><br>                    Plaintiffs,<br><br>v.<br><br>S&P Global, Inc., a New York corporation; S&P Global Market Intelligence, Inc., a New York corporation; Kiah Lau Haslett, an individual; Zach Fox, an individual; and Does 1-10, inclusive,<br><br>                    Defendants. | Case No. 2:18-cv-01105-PHX-JAT<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS** |

{00090678;2}

1

**TABLE OF CONTENTS**

2    I.      INTRODUCTION…………………………………………...……1

3    II.     LEGAL STANDARD..……..………………………………………2

4    III.    ARGUMENT………………………..……………………………...…3

5        A. The Article Is Not Protected By The Substantial Truth
           Doctrine……………………………………………………….……3

6            1.   The Motion Improperly Looks Beyond The Pleadings……....…. …4

7            2.   Because The Underlying Facts Are Disputed, The Determination

8                Of Substantial Truth Cannot Be Made By The Court…………........5

9            3.   The Inaccuracies In The Article Are Not "Slight" Or "Minor"…….6

10                a.   No Entity Owned by Ms. Hurry has been Subject to a

11                    Ruling for Poor Anti-Money Laundering Compliance…........6

12                b.   The SEC has Not Brought "Several Cases Against Clients

13                    of the Three Hurry-Owned Businesses"…………………….7

14                c.   Defendants' Attacks on Ms. Hurry's Integrity is Baseless......7

15        B. The Defamatory Statements And False Light Statements Are Not

16           Protected By The Fair Reporting Privilege……………………...… …8

17        C. The Statements Are "Of and Concerning" Plaintiffs………………………9

18        D. Statements Regarding Ms. Hurry's Character Cast Her in a False Light....10

19    IV.    LEAVE TO AMEND SHOULD BE GRANTED, IF NECESSARY………..13

20    V.     CONCLUSION………………………………………………....14

21

22

23

24

25

26

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal,*

5

    556 U.S. 662 (2009) .................................................................................................. 3

6

*Bell Atl. Corp. v. Twombly,*

    550 U.S. 544 (2007) .................................................................................................. 6

7

*Caudle v. Thomason,*

8

    942 F. Supp. 635 (D.D.C. 1996) ........................................................................ 2, 10

9

*Conley v. Gibson,*

10

    355 U.S. 41 (1957) .................................................................................................. 13

11

*Currier v. Western Newspapers, Inc.,*

12

    175 Ariz. 290 (1993) ................................................................................................. 4

13

*Douglass v. Hustler Magazine, Inc.,*

    769 F.2d 1128 (7th Cir. 1985) ............................................................................... 12

14

*Dube v. Likins,*

15

    216 Ariz. 406, 167 P.3d 93 (Ariz. Ct. App. 2007) .................................................. 5

16

*Fendler v. Phoenix Newspapers Inc.,*

17

    130 Ariz. 475, 636 P.2d 1257 (Ct. App. 1981) ...................................................... 5

18

*Ferm v. McCarty,*

    No. 2:12-CV-00782-RFB, 2014 WL 6983234 (D. Nev. Dec. 9, 2014) .................... 4

19

20

*First Franklin Fin. Corp. v. Dreamscape Mortg., L.L.C.,*

    No. CV 07-1707-PHX-MHM, 2008 U.S. Dist. LEXIS 43176 (D. Ariz.

21

    May 29, 2008) ......................................................................................................... 13

22

*Foman v. Davis,*

23

    371 U.S. 178 (1962) ................................................................................................ 13

24

*Glazing Health & Welfare Fund v. Accuracy Glass & Mirror Co.,*

    2015 WL 1040777 (D. Nev. Mar. 9, 2015) ............................................................. 3

25

26

*Godbehere v. Phoenix Newspapers, Inc.*,
    162 Ariz. 335, 783 P.2d 781 (Ariz. 1989) ......................................................... 2, 11, 12

*Green Acres Trust v. London*,
    141 Ariz. 609, 688 P.2d 617 (Ariz. 1984) (in banc) ...................................................... 8, 9

*Hart v. Seven Resorts*,
    190 Ariz. 272, 947 P.2d 845 (Ariz. Ct. App. 1997)...................................................... 12

*Jankovic v. Int'l Crisis Grp.*,
    494 F.3d 1080 (D.C. Cir. 2007) .................................................................................. 10

*Keiser v. Lake Cty. Superior Court*,
    2005 WL 3370006 (N.D. Cal. Dec. 12, 2005), *aff'd*, 369 F. App'x 846
    (9th Cir. 2010).............................................................................................................. 2

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ....................................................................................... 4

*Loveland v. Valencia*,
    No. CV-13-02621-PHX-PGR, 2014 U.S. Dist. LEXIS 176163 (D. Ariz.
    Dec. 19, 2014)............................................................................................................ 13

*U.S. ex rel. Putnam v. E. Idaho Reg'l Med. Ctr.*,
    2008 WL 4498812 (D. Idaho Oct. 3, 2008) ................................................................. 2

*Rabang v. INS*,
    35 F.3d 1449 (9th Cir. 1994) ....................................................................................... 3

*Schwalbach v. Jones*,
    27 Ariz. 260, 232 P. 558 (1925)................................................................................... 6

*Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*,
    135 F.3d 658 (9th Cir. 1998) ....................................................................................... 3

*Xcentric Ventures, LLC v. Stanley*,
    2007 WL 1795811 (D. Ariz. June 21, 2007) .............................................................. 12

**Other Authorities**

Federal Rules of Civil Procedure Rule 8 ............................................................................ 2

FINRA Rule 2010............................................................................................................... 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

FRCP 9 ................................................................................................................ 2

FRCP 15(a)(2) .................................................................................................. 13

FRCP 12(b)(6) ................................................................................................ 1, 3

FRCP 15 ............................................................................................................ 13

Restatement (Second) Torts § 564 cmt. ....................................................... 10

Restatement (Second) of Torts, § 581(A), cmt................................................ 3

Plaintiffs Justine Hurry ("Ms. Hurry") and Scottsdale Capital Advisors Corp. ("SCA") (collectively, "Plaintiffs"), submit their Response in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss ("Motion").

**I.**

**INTRODUCTION**

This action arises from Defendants' publication of an article ("Article") that contained three defamatory statements regarding Plaintiffs (the "Defamatory Statements"), and four false light statements regarding Ms. Hurry (the "False Light Statements").

Prior to publication of the Article, Plaintiffs repeatedly requested an opportunity to review the Article. Defendants refused those requests and instead published a "hit piece" on Plaintiffs.

Even after Plaintiffs sent a written demand letter itemizing the Defamatory Statements and False Light Statements, and requesting correction, Defendants refused to budge.

In an effort to escape liability for the Defamatory Statements and False Light Statements, Defendants' Motion throws every possible defense against the wall in the vain hope that something will stick. On examination, each of Defendants' arguments fails.

First, the Defamatory Statements and False Light Statements are not protected by the substantial truth doctrine, because the substantial truth doctrine only protects "slight" or "minor" inaccuracies. Here, the inaccuracies in the Article are neither slight nor minor; they are outright false.

Second, the Defamatory Statements and False Light Statements are not protected by the fair reporting privilege, because the Article completely misrepresents the matters on which it reports. In particular, contrary to the allegations in the Article, Ms. Hurry and SCA have never been subject to a ruling for poor anti-money laundering compliance.

1

Third, the Defamatory Statements and False Light Statements are "of and concern" Ms. Hurry, because the entire Article is an assault on her integrity and business ethics. The Article "leaves no doubt" regarding who it is about.  *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996).

Fourth, the First Amendment does not shield Defendants for the False Light Statements regarding Ms. Hurry's integrity and good character.  As the Arizona Supreme Court has held, false statements that impeach a "plaintiff's honesty, integrity, virtue, or reputation" make a defendant liable for false light invasion of privacy.  *Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 341, 783 P.2d 781, 787 (Ariz. 1989).

Fifth, Defendants are properly held liable for their False Light Statements because they are unreasonably offensive and attribute false characteristics about Ms. Hurry.  *Id.* An invasion of privacy/false light claim "does not protect reputation but protects mental and emotional interests.  Indeed, '[t]he gravamen of [a privacy] action . . . is the injury to the feelings of the plaintiff, the mental anguish and distress caused by the publication.'" *Godbehere,* 162 Ariz. at 341, 783 P.2d at 787 (quoting *Reed v. Real Detective Publishing Co.,* 63 Ariz. 294, 305, 162 P.2d 133, 139 (Ariz. 1945)).

Accordingly, Defendants' Motion fails as a matter of law.  The Court should, therefore, deny the Motion, and allow Plaintiffs to litigate their claims.

## II.

## LEGAL STANDARD

Defendants incorrectly allege that the Ninth Circuit requires a heightened pleading standard in defamation cases.  (Motion 8:5-10).  In fact, plaintiffs pursuing defamation claims need only allege enough to meet the notice pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure ("FRCP"), not the heightened pleading requirements of FRCP Rule 9.  *See U.S. ex rel. Putnam v. E. Idaho Reg'l Med. Ctr.*, 2008 WL 4498812, at *1 (D. Idaho Oct. 3, 2008); *see also Keiser v. Lake Cty. Superior Court,* 2005 WL

3370006, at *14 (N.D. Cal. Dec. 12, 2005), *aff'd*, 369 F. App'x 846 (9th Cir. 2010) ("a defamation claim does not require Plaintiff to meet any heightened pleading requirement").

When considering a motion to dismiss for failure to state a claim under FRCP 12(b)(6), "the court is to take all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc*., 135 F.3d 658, 663 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must simply contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausibility, in the context of a motion to dismiss, means that a plaintiff has pleaded facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glazing Health & Welfare Fund v. Accuracy Glass & Mirror Co*., 2015 WL 1040777, at *1 (D. Nev. Mar. 9, 2015), on reconsideration, 2016 WL 1270991 (D. Nev. Mar. 30, 2016), *aff'd sub nom. Glazing Health & Welfare Fund v. Lamek*, 885 F.3d 1197 (9th Cir. 2018). "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rabang v. INS*, 35 F.3d 1449, 1451 (9th Cir. 1994).

## III.

## ARGUMENT

### A.    The Article Is Not Protected By The Substantial Truth Doctrine

Defendants allege that the Article is protected by the substantial truth doctrine. It is not.

The substantial truth doctrine only protects "minor" or "slight" inaccuracies in a publication. *See* Restatement (Second) of Torts, § 581(A), cmt. f; (1977). A statement is "substantially true" if "viewed through the eyes of the average reader it differs from the

truth only in **insignificant** details." *Currier v. Western Newspapers, Inc.*, 175 Ariz. 290, 293 (1993) (emphasis added).

The Defamatory Statements and False Light Statements are more than "slightly" inaccurate. They are wrong.

### 1.    The Motion Improperly Looks Beyond The Pleadings

"At the motion to dismiss stage, the Court cannot look beyond the pleadings to determine whether allegedly defamatory statements were true or substantially true, or whether Defendants' summary of official proceedings was fair, accurate, and impartial and thus entitled to the fair report privilege." *Ferm v. McCarty*, No. 2:12-CV-00782-RFB, 2014 WL 6983234, at *5 (D. Nev. Dec. 9, 2014). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001).

Here, the Complaint does not refer to, or incorporate, any FINRA or SEC enforcement actions. On the contrary, the Complaint alleges that the SEC has **not** brought several cases against clients of the "three Hurry-owned companies," and financial regulators have **not** filed enforcement actions regarding inadequate money-laundering compliance at SCA.

Defendants' introduction of documents outside the pleadings—and Defendants' **mischaracterization of those documents**—demonstrates the reason why the Court should not look beyond the pleadings. In particular, Exhibit D to the Motion was not an enforcement proceeding against SCA or Ms. Hurry. It was a wholly voluntary settlement that SCA and Ms. Hurry **offered to FINRA with no admission of wrongdoing**. *See* Motion, Exh. D at 1. Defendants' characterization of Exhibit D is not fair, accurate, or impartial, and therefore cannot be considered in deciding Defendants' Motion to Dismiss.

1
2

     **2.**     **Because The Underlying Facts Are Disputed, The Determination Of Substantial Truth Cannot Be Made By The Court**

3
4
5
6
7
8

"Whether a statement is capable of defamatory meaning is a question of law for the court, but whether the meaning conveyed was defamatory is a question for the jury." *Dube v. Likins,* 216 Ariz. 406, 419, ¶ 43, 167 P.3d 93, 106 (Ariz. Ct. App. 2007).  Moreover, only when the underlying facts are undisputed, can a determination of substantial truth be a matter for the court.  *Fendler v. Phoenix Newspapers Inc.,* 130 Ariz. 475, 480, 636 P.2d 1257, 1262 (Ct. App. 1981).

9

Here, the underlying facts in this matter are materially disputed:

10
11
12

- Defendants incorrectly contend that Exhibit D was an "enforcement proceeding." (Motion 9:7).  Defendants are wrong.  Exhibit D was a voluntary settlement that contained no admission of wrongdoing.

13
14
15

- Plaintiffs allege that financial regulators have not filed enforcement actions regarding inadequate anti-money laundering compliance at SCA. (Complaint ¶12(c)).  Defendants dispute this. (Motion 9:7-24, 10:15-16).

16
17
18

- The Complaint alleges that Ms. Hurry has not been involved in the "pump-and-dump" of any penny stocks. (Complaint ¶43(d)).  Defendants dispute this. (*See* Article).

19
20
21
22
23
24

- The Complaint alleges that one of the Defamatory Statements is that the SEC has brought cases against "clients of the three Hurry-owned companies." (Complaint ¶35(b)).  Plaintiffs dispute that there are "three Hurry-owned companies", (which Defendants now concede).  Moreover, Plaintiffs dispute that there are even two "Hurry-owned companies" as alleged in the Motion.  (Motion 12:1-2).

25
26

In sum, because the primary underlying facts are disputed between the parties, the Court cannot determine as a matter of law that the statements are substantially true.

### 3. The Inaccuracies In The Article Are Not "Slight" Or "Minor"

Defendants attempt to escape liability by arguing that all three of the Defamatory Statements and three of the four False Light Statements[1] are only slightly inaccurate. Defendants are wrong.

### a. No Entity Owned by Ms. Hurry has been Subject to a Ruling for Poor Anti-Money Laundering Compliance

As alleged in the Complaint, Defendants falsely published that "Ms. Hurry co-owns a broker/dealer that was subject to a ruling for poor anti-money laundering compliance." (Compl. at ¶ 35). Defendants claim that this is substantially true based upon a voluntary settlement with FINRA, in which Ms. Hurry and SCA admitted no wrongdoing. (Motion, Exh. D at 1). It is therefore, incorrect that Ms. Hurry owns a broker/dealer subject to a ruling for poor anti-money laundering compliance.

The Motion contends that an SEC complaint filed against Alpine confirms the gist of their allegation. Notwithstanding that Ms. Hurry does not co-own Alpine, the SEC's filing of a complaint against Alpine is materially different than a ruling against it. As the Court is aware, a complaint merely needs to provide "'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FRCP 8(a)(2)). A judgment requires a plaintiff to prove by the preponderance of the evidence that a defendant is liable. *Schwalbach v. Jones*, 27 Ariz. 260, 263, 232 P. 558, 559 (1925). Defendants' conflation of a complaint filed by the SEC with a judgment is, therefore, improper, false, and defamatory.

Defendants' final argument regarding the gist of their false statements is that

---

[1] Defendants do not contend that the False Light Statement that Ms. Hurry has been involved in pump-and-dump schemes is true, thereby conceding its falsity.

1   FINRA issued a separate ruling against SCA that had nothing to do with anti-money

2   laundering.  (Motion Exh. G). Defendants allege that the findings in Exhibit G produced

3   no less damage to Plaintiffs' reputation than statements in the Article.  (Motion 11:5-6).

4   Defendants' argument fails because the Article states that Plaintiffs were sanctioned for

5   **anti-money laundering** issues, a loaded term implying criminal activity, while the ruling

6   in Exhibit G concerned issues related to inadequate supervision.  The sting of an

7   allegation related to money laundering is significantly more severe than allegations related

8   to supervision.  Therefore, the inaccuracies in the Article are not slight or minor.

9           **b.      The SEC has Not Brought "Several Cases Against Clients of the**

10                  **Three Hurry-Owned Businesses"**

11          The Article claims that the SEC "has brought several cases against clients of the

12   three Hurry-owned companies."  This statement is false on several levels.

13          First, according to the Article itself, Ms. Hurry only owns or co-owns a single

14   company, SCA—something Defendants admit in their Motion.  (Motion 11:14-15).

15          Second, Ms. Hurry has never stated that she owns Alpine. In fact, Exhibit C to the

16   Motion expressly states that Ms. Hurry and her husband "own **or operate**" certain

17   businesses that include Alpine.

18          Third, Defendants concede that the SEC has not brought any action against clients

19   of the so-called third "Hurry-owned company," Cayman Securities Clearing and Trading

20   SECZ, an entity with which Ms. Hurry has no affiliation.

21          The cumulative effect of Defendants' false statements demonstrates that

22   Defendants' errors were neither "slight" nor "minor."  The statement that Ms. Hurry owns

23   three businesses (and that clients of those three businesses have been subject to SEC

24   actions) is simply false.

25           **c.      Defendants' Attacks on Ms. Hurry's Integrity is Baseless**

26          Defendants try to excuse their False Light Statements—that Ms. Hurry lacks

integrity and good character—by alleging that she violated a purported "ethical rule." (Motion 12:24-25).

First, Ms. Hurry has never been found liable for breaching **any** FINRA rule, much less a so-called "ethical rule." As discussed above, Ms. Hurry entered into a voluntary settlement with FINRA that contained no admission of wrongdoing.

Second, Defendants' claim that "[a] Rule 2010 violation occurs when a member acts in bad faith or unethically" (Motion 12:16-17) is a definition entirely of Defendants' own making. Indeed, Defendants do not, and apparently cannot, cite to any authority for this definition.

Notwithstanding Defendants' attempt to create a new definition of FINRA Rule 2010, and their mischaracterization of Ms. Hurry's voluntary settlement, it is untrue that Ms. Hurry lacks integrity or good character.

**B.      The Defamatory Statements And False Light Statements Are Not Protected By The Fair Reporting Privilege**

The qualified fair reporting privilege does not attach to Defendants' statements because their statements are false and not "fair or accurate." *See Green Acres Trust v. London*, 141 Ariz. 609, 618, 688 P.2d 617, 626 (Ariz. 1984) (in banc) (finding no qualified privilege to defame). "Accuracy means 'substantially correct,' while fair means balanced." *Id.* (quoting Restatement (Second) of Torts, § 611, cmt. f). If the publication carries a "greater sting" in defamatory content that the original publication during the public proceeding, then the privilege does not apply. *Green Acres*, 141 Ariz. at 618, 688 P.2d at 626.

First, it is false for Defendants to publish that regulators have filed actions against SCA for inadequate anti-money laundering compliance, or that SCA has been subject to a ruling for poor anti-money laundering compliance. (Motion 13:24-14:1). SCA has not been subject to any ruling regarding poor anti-money laundering compliance. As

discussed above, SCA was previously fined for insufficient oversight, a very different charge than anything related to money laundering.  (*See* Exhibit G to Motion).

Second, as discussed above, the SEC has not brought actions against "clients of the three Hurry-owned businesses," because there is only one business owned by Ms. Hurry. Therefore, Defendants' statement that the SEC brought actions against "clients of the three Hurry-owned businesses," falsely and unfairly reports public documents and is not protected by the fair reporting privilege. *See Green Acres Tr.*, 141 Ariz. at 618 ("The report must be fair, and it must be accurate.").

Defendants' attempt to escape liability based upon the fair reporting privilege must therefore be denied.

## C.    The Statements Are "Of and Concerning" Plaintiffs

Defendants' next argument, that the Defamatory Statements and the False Light Statements do not concern Plaintiffs, is absurd.

As an initial matter, Defendants concede that two of the three Defamatory Statements are "of and concern" SCA.  (*See* Motion, Exh. B). Defendants further concede that the first and third False Light Statements concern Ms. Hurry. (*Id*.)

Second, the Defamatory Statements concern Ms. Hurry because the entire Article is devoted to the proposition that Ms. Hurry's application to purchase shares in the Bank of Orrick was denied because of her association with entities subject to enforcement actions.  As the Article states: "Financial regulations have in the past filed multiple enforcement actions against Hurry's companies, raising the prospect that her bank application could receive significant scrutiny."  (Complaint Exh. 1).  The Article implies that Ms. Hurry lacks integrity and good character based upon the Defamatory Statements.

Third, the fourth False Light Statement—that "Ms. Hurry has been involved in 'pump-and-dumps' of penny stocks"—is indisputably of and concerning Ms. Hurry. Defendants' bizarre claim that these pump-and-dump allegations do not concern Ms.

Hurry is contradicted by the black letter of the Article, which discusses pump-and-dump schemes in the very same paragraph as Ms. Hurry's suitability and good character.

Fourth, even if the Defamatory Statements do not explicitly refer to Ms. Hurry, those statements are "of and about" her because a listener would reasonably believe that the statements referred to her.  *See* Restatement (Second) Torts § 564 cmt. b (1976).  As one court stated:  "The requirement that the libelous statement 'must leave no doubt' as to the person's identity is met by the fact that the statements were specific enough that some readers could precisely identify the person mentioned in the defamatory statement as plaintiff." *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996).  Here, there is no doubt regarding the person implicated by the Defamatory Statements: Ms. Hurry. According to the logic of the Article, Ms. Hurry owns three businesses that are involved in money laundering; she lacks integrity and good character; her clients have been sued by the SEC; and her application to buy shares in a bank was therefore rejected by the FDIC two times.

Fifth, the cases on which Defendants rely are inapposite.  In *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080 (D.C. Cir. 2007), the Court held that the principle that "statements which refer to an organization do not implicate its members . . . **is not absolute**.  If, for example, one person is solely in charge of corporate decision making, an attack on a corporation would vicariously attack the decision maker." *Id*. at 1089 (emphasis added). Based upon the Article's focus on Ms. Hurry, and her purported ownership of the three Hurry-companies, Defendants' attacks on those entities can only be understood as attacks on Ms. Hurry.

In sum, the Defamatory Statements and the False Light Statements are of and concern both Plaintiffs.

**D.     Statements Regarding Ms. Hurry's Character Cast Her in a False Light**

Defendants' final argument—that the First Amendment somehow protects liability

for attacks on Ms. Hurry's integrity and character—is wrong as a matter of law.

Defendants' argument is based almost exclusively upon defamation cases, and not false light cases.  The two causes of action are not the same, and the attacks on Ms. Hurry's integrity and character are actionable as False Light Statements.

"False light invasion of privacy . . . protects against the conduct of knowingly or recklessly publishing false information or innuendo that a 'reasonable person' would find 'highly offensive.'" *Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 340, 783 P.2d 781, 786 (Ariz. 1989).  The Arizona Supreme Court has held that misrepresentations regarding a person's character constitute false light invasions of privacy.  *See Id.*, at 341 ("to qualify as a false light invasion of privacy, the publication must involve a major misrepresentation of the **plaintiff's character**, history, activities or beliefs, not merely minor or unimportant inaccuracies") (emphasis added).   Finally, a claim for false light may be based upon untrue publications "or when the publication of true information creates a false implication about the individual.  In the latter type of case, the false innuendo created by the highly offensive presentation of a true fact constitutes the injury."  *Id.*

Defendants argue that the Article does not state as an objective fact that Ms. Hurry lacks integrity and good character, and that the Article "merely raises questions" about Ms. Hurry's integrity and good character.  (Motion 15:18-20, 16:4-5).  Nonsense.  The entire thrust of the Article is to call into question Ms. Hurry's integrity and good character.  Accordingly, the Article repeatedly associates Ms. Hurry with businesses she does not own, makes false statements regarding proceedings against her and businesses she does not own, implies that Ms. Hurry was involved in "pump-and-dump" schemes, and even quotes an attorney at a firm in Washington, DC, and a business school professor who have never met her.  All of this was done for the singular purpose of trying to establish as fact that Ms. Hurry lacks integrity and good character.  Based upon the

Defamatory Statements and the False Light Statements, a reasonable reader can only conclude (as the Article does) that Ms. Hurry lacks integrity and good character.

Defendants next argue the False Light Statements are protected because they are couched in generalities about the law and loose conjecture.  (Motion 16:22-17:2).  This argument is disingenuous at best.  The Article is replete with false statements and false innuendo about Ms. Hurry.  The **only** reason the Article discusses purported rulings against "the three Hurry-owned businesses," "the background and integrity of the [bank investor] applicants," enforcement actions against clients of "the three Hurry-owned businesses," and "pump-and-dump" schemes is to create false innuendo regarding Ms. Hurry's character. *Godbehere,* 162 Ariz. at 341.  This is not conjecture, but smears by association and innuendo.

Defendants' final argument that statements regarding Ms. Hurry's integrity and good character are not statements of fact capable of being proven true or false is a red herring, because false light statements do not need to be false to be actionable.  *See Godbehere,* 162 Ariz. at 341 ("A false light cause of action may arise when something untrue has been published about an individual, **or** when the publication of true information creates a false implication about the individual.") (Emphasis in original).  The tort is established if a defendant knowingly or recklessly published false information or innuendo about the plaintiff that a reasonable person would find highly offensive. *Hart v. Seven Resorts,* 190 Ariz. 272, 280, 947 P.2d 845, 854 (Ariz. Ct. App. 1997).

Indeed, none of the cases cited by Defendants in this section of their Motion concerned a claim for false light.  In fact, a Court in this district held that describing individuals as "partners in slime," "unethical attorney," an "Internet extortionist," and a "partner in the ripoff report extortion scam" constituted false light invasion of privacy. *See Xcentric Ventures, LLC v. Stanley,* 2007 WL 1795811, at *8 (D. Ariz. June 21, 2007); *see also Douglass v. Hustler Magazine, Inc.,* 769 F.2d 1128, 1134 (7th Cir. 1985) (false

1    light may be based upon making individual "seem pathetic or ridiculous[,] . . .

2    dishonest or incompetent or immoral").

3         Based on the foregoing, the False Light Statements against Ms. Hurry are not

4    protected by the First Amendment.

5                                    **IV.**

6         **LEAVE TO AMEND SHOULD BE GRANTED, IF NECESSARY**

7         "The court should freely give leave [to amend] when justice so requires." FRCP

8    15(a)(2); *First Franklin Fin. Corp. v. Dreamscape Mortg., L.L.C.,* No. CV 07-1707-PHX-

9    MHM, 2008 U.S. Dist. LEXIS 43176, at *2 (D. Ariz. May 29, 2008) (acknowledging that

10   Rule 15 is very liberal and should be granted when justice so requires). This phrase is

11   interpreted as an affirmation of the liberal approach to pleading taken by the modern rules

12   (*see, e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962)) and as an encouragement to judges

13   to decide a plaintiff's claims on the merits whenever possible.  *See Conley v. Gibson*, 355

14   U.S. 41, 48 (1957);  *see also, Loveland v. Valencia*, No. CV-13-02621-PHX-PGR, 2014

15   U.S. Dist. LEXIS 176163, at *5 (D. Ariz. Dec. 19, 2014) (finding no undue delay, bad

16   faith or dilatory motive on the plaintiffs' part and allowing amendment to complaint under

17   the liberal standard of Rule 15). .

18        If the Court should conclude that Plaintiffs have not adequately pleaded any of

19   their claims, Plaintiffs respectfully request that leave to amend should be granted to cure

20   any deficiencies.

21

22   */ / /*

23   */ / /*

24   */ / /*

25   */ / /*

26   */ / /*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**V.**

**CONCLUSION**

For the all the reasons herein, the Court should deny the Motion.


RESPECTFULLY SUBMITTED this 2nd day of May, 2018.


                                        LIMÓN-WYNN LAW, PLLC


                              By:  /s/ Monica A. Limón-Wynn
                                   Monica A. Limón-Wynn
                                   Tempe City Center
                                   1400 East Southern Avenue, Suite 915
                                   Tempe, Arizona  85282-8008
                                   Attorneys for Plaintiffs

                                   – and –

                                   Charles J. Harder
                                   Jordan Susman
                                   HARDER LLP
                                   132 S. Rodeo Drive, Fourth Floor
                                   Beverly Hills, California 90212
                                   Attorneys for Plaintiffs