1  Monica A. Limón-Wynn (#019174)
   LIMÓN-WYNN LAW, PLLC
2  Tempe City Center
3  1400 East Southern Avenue, Suite 915
   Tempe, Arizona  85282-8008
4  Telephone:  (480) 946-0680
   Facsimile:  (888) 893-9698
5  mlimon-wynn@mlwlawaz.com
6  Attorneys for Plaintiff

7  Charles J. Harder (Admitted *pro hac vice*)
8  Jordan Susman (Admitted *pro hac vice*)
   Dilan A. Esper (Admitted *pro hac vice*)
9  HARDER LLP
   132 S. Rodeo Drive, Fourth Floor
10 Beverly Hills, California 90067
11 Telephone:  (424) 203-1600
   Facsimile:  (424) 203-1601
12 CHarder@harderllp.com
13 JSusman@harderllp.com
   DEsper@harderllp.com
14 Attorneys for Plaintiffs

15            IN THE UNITED STATES DISTRICT COURT
16                    DISTRICT OF ARIZONA
17

18 Justine Hurry, an individual; Scottsdale      Case No. 2:18-cv-01105-PHX-JAT
19 Capital Advisors Corp., an Arizona
   corporation,                                  **PLAINTIFFS' RESPONSE IN**
20                                               **OPPOSITION TO DEFENDANTS'**
21                 Plaintiffs,                   **RULE 12(c) MOTION FOR**
                                                 **JUDGMENT ON THE PLEADINGS**
22 v.
23
   S&P Global, Inc., a New York corporation;
24 S&P Global Market Intelligence, Inc., a
   New York corporation; Kiah Lau Haslett,
25 an individual; Zach Fox, an individual; and
26 Does 1-10, inclusive,
27                 Defendants.
28

{00093674;2}

1       Plaintiffs Justine Hurry ("Ms. Hurry") and Scottsdale Capital Advisors Corp.

2 ("SCA") (collectively, "Plaintiffs"), submit their Response in Opposition to the Rule 12(c)

3 Motion for Judgement on the Pleadings ("Motion") filed by S&P Global, Inc., S&P Global

4 Market Intelligence, Inc., Kiah Lau Haslett, and Zach Fox (collectively, "Defendants").

5 ## I.    __INTRODUCTION__

6       This action arises out of Defendants' publication of an article ("Article") that

7 contained three defamatory statements regarding Plaintiffs (the "Defamatory

8 Statements"), and four false light statements regarding Ms. Hurry (the "False Light

9 Statements"). Prior to publication of the Article, Plaintiffs repeatedly requested an

10 opportunity to review the Article. Defendants refused those requests and instead published

11 a "hit piece" on Plaintiffs. Even after Plaintiffs sent a written demand letter itemizing the

12 Defamatory Statements and False Light Statements, and requesting correction, Defendants

13 refused to budge.

14       In an effort to escape liability for the Defamatory Statements and False Light

15 Statements, Defendants moved to dismiss this action under Federal Rules of Civil

16 Procedure Rule 12(b)(6). On June 13, 2018, this Court denied that motion on the grounds

17 that it improperly relied on documents extrinsic to the Complaint. (*See* Doc. 21 at 1:18-

18 27, 2:24-3:5).

19       Defendants' second attempt to dispose of this action, by way of their instant Rule

20 12(c) Motion, fares no better than their first attempt and suffers from the same defects.

21 The Motion recycles the same contentions previously raised by Defendants, and on

22 examination, each such argument fails.

23       First, Defendants' Motion once again improperly relies on documents that cannot

24 be considered because they are extrinsic to the pleadings and inadmissible. The Motion

25 fails because it would require the Court to take judicial notice of the truth of the statements

26 contained in the documents Defendants have proffered, which is **not** properly subject to

27 judicial notice. *See M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483,

28 1491 (9th Cir. 1983). In addition, Defendants make no attempt to authenticate the

proffered documents.  It is well-settled that "[a]uthentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'"  *Orr v. Bank of Am.,* NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (quoting Fed. R. Evid. 901(a)).  Defendants have failed to satisfy this requirement.  Because this Court previously held that whether the proffered documents may be considered was "critical" in deciding Defendants' (nearly-identical) 12(b)(6) motion, Defendants' Rule 12(c) Motion must be denied because their second attempt to use their proferred documents remains improper and they are inadmissible.  (*See* Doc. 21 at 2:24-26).

Second, the Defamatory Statements and False Light Statements are not protected by the substantial truth doctrine, because the substantial truth doctrine only protects "slight" or "minor" inaccuracies.  Here, the inaccuracies in the Article are neither slight nor minor; they are outright false.  Furthermore, the underlying facts in this matter are materially disputed, which precludes a determination of substantial truth at this stage of the proceedings.

Third, the Defamatory Statements and False Light Statements are not protected by the fair reporting privilege, because the Article materially misrepresents the matters on which it reports.  In particular, contrary to the allegations in the Article, Ms. Hurry and SCA have never been subject to a ruling for poor anti-money laundering compliance.

Fourth, the Defamatory Statements and False Light Statements are "of and concerning" Ms. Hurry, because the entire Article is an assault on her integrity and business ethics.  The Article "leaves no doubt" regarding who it is about.  *See Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996).  For this same reason, all of the Defamatory Statements are also of and concerning SCA.

Fifth, the First Amendment does not shield Defendants for the False Light Statements regarding Ms. Hurry's integrity and good character.  As the Arizona Supreme Court has held, false statements that impeach a "plaintiff's honesty, integrity, virtue, or reputation" make a defendant liable for false light invasion of privacy.  *Godbehere v.*

*Phoenix Newspapers, Inc.,* 162 Ariz. 335, 341 (Ariz. 1989).  Additionally, Defendants are properly held liable for the False Light Statements because the statements are unreasonably offensive and attribute false characteristics about Ms. Hurry.  *Id.*  An invasion of privacy/false light claim "does not protect reputation but protects mental and emotional interests.  Indeed, '[t]he gravamen of [a privacy] action . . . is the injury to the feelings of the plaintiff, the mental anguish and distress caused by the publication.'" *Godbehere,* 162 Ariz. at 341 (quoting *Reed v. Real Detective Publishing Co.,* 63 Ariz. 294, 305 (Ariz. 1945)).

Accordingly, Defendants' Motion fails as a matter of law.  The Court should, therefore, deny the Motion, and allow Plaintiffs to litigate their claims.

## II.   LEGAL STANDARD

In deciding a FRCP Rule 12(c) motion, a court applies the same standard for a motion to dismiss under Rule 12(b)(6).  *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 fn. 4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule 12(b)(6).") (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).  Accordingly "[f]or the purposes of [a 12(c)] motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) ("[The court] must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party.").  Judgment on the pleadings may only be "properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

To survive a motion for judgment on the pleadings, a complaint must simply "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Plausibility… means that a plaintiff

has pleaded facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glazing Health & Welfare Fund v. Accuracy Glass & Mirror Co.*, 2015 WL 1040777, at *1 (D. Nev. Mar. 9, 2015), aff'd sub nom. *Glazing Health & Welfare Fund v. Lamek*, 885 F.3d 1197 (9th Cir. 2018).  "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rabang v. INS*, 35 F.3d 1449, 1451 (9th Cir. 1994).  "Federal courts generally hesitate to grant judgment on the pleadings, because 'hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his claim or defense.'" *Carrasco v. Fiore Enters.*, 985 F.Supp. 931, 934 (D.Ariz.1997) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, Civil 2d § 1368 (1990)).

## III.  ARGUMENT

### A.  Defendants' Request To Judicially Notice Extrinsic Documents Is Improper

#### 1.  The Documents Proffered By Defendants Are Inadmissible Because They Have Not Been Authenticated

It is well-settled that "[a]uthentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (quoting Fed. R. Evid. 901(a)) (holding evidence not properly authenticated by plaintiff is inadmissible).  "In order to lay the foundation for receipt of a document in evidence, the party offering the exhibit must provide the 'testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery'…the affiant must state specific facts from which the court could infer the affiant could identify correctly the document and knows the attachment is a true and correct copy of the genuine document." *Blount v. Connecticut Gen. Life Ins. Co.*, 2002 WL 31974405, at *3 (D. Or. July 2, 2002) (quoting

1  *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970)).

2  Defendants have failed to satisfy this requirement and have made no attempt to

3  authenticate the documents they seek to have this Court judicially notice.  Instead,

4  Defendants have merely attached these documents as Exhibits B, C, and D to their Motion

5  and contend that they are "official cop[ies]" without any evidentiary support, and fail to

6  lay any foundation for these documents or attest to their authenticity.  (Doc. 25 at 8:8-9,

7  8:22-23, 9:9-10).  Accordingly, the three extrinsic documents are inadmissible and should

8  be disregarded by this Court.  *See Madeja v. Olympic Packers, LLC.*, 310 F.3d 628, 639

9  (9th Cir. 2002) (affirming district court's refusal to take judicial notice of documents not

10  authenticated by proponent); *Kohler v. Southland Foods, Inc.*, 2010 WL 11545055, at *3

11  (C.D. Cal. Mar. 9, 2010), aff'd, 459 F. App'x 617 (9th Cir. 2011) (refusing to take judicial

12  notice of documents from another court case, including a judgment, that were not

13  authenticated by defendants: "Defendants have offered no other evidence that these

14  documents are what Defendants claim; therefore Defendants do not satisfy the

15  requirements of Federal Rule of Evidence 901(a).").[1]  This is the **second time** Defendants

16  have failed to comply with the procedural requirements in attempting to proffer these

17  documents and they should not be permitted to have yet another opportunity to do so.  (*See*

18  Doc. 21 at 2:24-3:3) (holding Defendants failed to meet their burden to establish

19  admissibility of same extrinsic documents).

20  **2.    The Court May Not Take Judicial Notice Of the Truth Of The**

21  **Statements In The Documents Proffered By Defendants**

22  Even if the Court were to take judicial notice of the three documents proffered by

23  Defendants, it cannot take judicial notice of the **truth** of the statements therein.  Judicial

24  notice of court filings may be taken "only for the limited purpose of recognizing the

25

26  [1]    The documents proffered by Defendants also do not fall under any of the
categories of self-authenticating evidence under Fed. R. Evid. 902.  *See Kohler v.*

27  *Southland Foods, Inc.,* 2010 WL 11545055, at *3 (C.D. Cal. Mar. 9, 2010), aff'd, 459 F.
App'x 617 (9th Cir. 2011) (holding court records submitted without certificate from

28  clerk of court not self-authenticating under Fed. R. Evid. 902).

'judicial act' that the order represents on the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)).

"As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983); *see also Lee v. City of Los Angeles,* 250 F.3d 668, 690 (9th Cir.2001) (judicial notice of public records is limited to the existence of the documents, not the truth of the matters stated in them); *Garber v. Heilman*, 2009 WL 409957, at *1 (C.D. Cal. Feb. 18, 2009) ("[T]o the extent that plaintiff is requesting that the Court take judicial notice of the first page of a court filing in Los Angeles Superior Court Case…for the truth of any statements contained therein, plaintiff's request is denied because the truth of such statements does not constitute a matter 'not subject to reasonable dispute.'").

Accordingly, Defendants may not rely on the proffered documents to establish any alleged facts outside the four corners of Plaintiffs' Complaint, including without limitation, allegations that "in 2010, FINRA's Department of Enforcement filed a disciplinary complaint against SCA (and Ms. Hurry)," "a $7,500 fine and 40-day suspension was entered against Ms. Hurry, and a $125,000 fine and censure was entered against SCA," and that "[m]any Scottsdale and Alpine customers have been charged with violations of federal securities laws, including violations relating to transactions cleared through Alpine."  (Doc. 25 at 8:10-13, 8:15-17, 9:2-4).

**B.**      **The Article Is Not Protected By The Substantial Truth Doctrine**

Defendants allege that Defamatory Statements One and Three are protected by the substantial truth doctrine.  It is not.

The substantial truth doctrine only protects "minor" or "slight" inaccuracies in a publication.  *See* Restatement (Second) of Torts, § 581(A), cmt. f; (1977).  A statement is "substantially true" if "viewed through the eyes of the average reader it differs from the

1  truth only in **insignificant** details." *Currier v. Western Newspapers, Inc.*, 175 Ariz. 290,

2  293 (1993) (emphasis added).

3      The Defamatory Statements and False Light Statements are more than "slightly"

4  inaccurate.  They are wrong.

5              **1.      The Motion Improperly Looks Beyond The Pleadings**

6      "At the motion to dismiss stage, the Court cannot look beyond the pleadings to

7  determine whether allegedly defamatory statements were true or substantially true, or

8  whether Defendants' summary of official proceedings was fair, accurate, and impartial

9  and thus entitled to the fair report privilege." *Ferm v. McCarty*, 2014 WL 6983234, at *5

10  (D. Nev. Dec. 9, 2014).  A court may consider material submitted as part of the complaint

11  or relied upon in the complaint, and may also consider material subject to judicial notice.

12  *See Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001).  However, the court's

13  decision to take judicial notice "is a discretionary one." *Shugart v. GYPSY Official No.*

14  *251715, its Engines, Mach., Appurtenances*, 2015 WL 1965375, at *2 (W.D. Wash. May

15  1, 2015).

16      Here, the Complaint does not refer to, or incorporate, any FINRA or SEC

17  enforcement actions.  On the contrary, the Complaint alleges that the SEC has **not** brought

18  several cases against clients of the "three Hurry-owned companies," and financial

19  regulators have **not** filed enforcement actions regarding inadequate money-laundering

20  compliance at SCA.  (*See* Compl. at ¶ 35).

21      Defendants' introduction of documents outside the pleadings, their improper

22  request for judicial notice of these documents (*see infra,* Section III. A.), and their

23  **mischaracterization of these documents** demonstrates why this Court should not look

24  beyond the pleadings.  In particular, Exhibit B to the Motion was not an enforcement

25  proceeding against SCA or Ms. Hurry.  It was a wholly voluntary settlement that SCA and

26  Ms. Hurry **offered to FINRA with no admission of wrongdoing**.  (*See* Doc. 25-2, Ex. B

27  at pp. 1-2).  In addition to the impropriety of their request to take judicial notice of extrinsic

28  documents, Defendants' characterization of Exhibit B is not fair, accurate, or impartial,

1    and therefore cannot be considered in deciding Defendants' Motion.

2              **2.      Because The Underlying Facts Are Disputed, The**

3                       **Determination Of Substantial Truth Cannot Be Made By The**

4                       **Court**

5         "Whether a statement is capable of defamatory meaning is a question of law for the

6    court, but whether the meaning conveyed was defamatory is a question for the jury." *Dube*

7    *v. Likins,* 216 Ariz. 406, 419, ¶ 43, 167 P.3d 93, 106 (Ariz. Ct. App. 2007).  Moreover,

8    only when the underlying facts are undisputed, can a determination of substantial truth be

9    a matter for the court.  *Fendler v. Phoenix Newspapers Inc.,* 130 Ariz. 475, 480  (Ariz. Ct.

10   App. 1981).

11        Here, the underlying facts in this matter are materially disputed, which precludes a

12   determination of substantial truth at this stage of the proceedings:

13   •    Defendants incorrectly contend that Exhibit B was an "enforcement

14        proceeding." (Doc. 25 at 10:16).  Defendants are wrong.  Exhibit B was a

15        voluntary settlement that contained no admission of wrongdoing.  (*See* Doc.

16        25-2, Ex. B at pp. 1-2).

17   •    Plaintiffs allege that financial regulators have not filed enforcement actions

18        regarding inadequate anti-money laundering compliance at SCA.  (Compl.

19        at ¶ 35(c)).  Defendants dispute this.  (Doc. 25 at 10:15-11:8, 11:23-25).

20   •    The Complaint alleges that Ms. Hurry has not been involved in the "pump-

21        and-dump" of any penny stocks. (Compl. at ¶ 43(d)).  Defendants dispute

22        this. (*See* Compl. at Ex. 1, Article).

23   •    The Complaint alleges that one of the Defamatory Statements is that the

24        SEC has brought cases against "clients of the three Hurry-owned

25        companies."  (Compl. at ¶ 35(b)).  Plaintiffs dispute that there are "three

26        Hurry-owned companies," (which Defendants now concede).  (Doc. 25 at

27        11:23-25).  Moreover, Plaintiffs dispute that there are even two "Hurry-

28        owned companies" as alleged in the Motion.  (*Id.*).

1    In sum, because the primary underlying facts are disputed between the parties, the

2    Court cannot determine as a matter of law that the statements are substantially true.

3             **3.    The Inaccuracies In The Article Are Not "Slight" Or "Minor"**

4    Defendants attempt to escape liability by contending that Defamatory Statements

5    One and Three[2] are only slightly inaccurate.  (Doc. 25 at 11:26-28).  Defendants are wrong.

6             **a.    No Entity Owned by Ms. Hurry Has Been Subject To A**

7                     **Ruling For Poor Anti-Money Laundering Compliance**

8    As alleged in the Complaint, Defendants falsely published that "Ms. Hurry co-owns

9    a broker/dealer that was subject to a ruling for poor anti-money laundering compliance."

10   (Compl. at ¶ 35).  Defendants' statement that Ms. Hurry owns an entity subject to "a

11   ruling" for poor anti money-laundering compliance is a loaded term implying criminal

12   activity and a conclusive finding of guilt.  Defendants argue that this is substantially true

13   based upon a voluntary settlement with FINRA, in which Ms. Hurry and SCA admitted

14   no wrongdoing, which is materially different that "a ruling."  (Doc. 25-2, Ex. B to Motion

15   at pp. 1-2).  It is therefore, incorrect that Ms. Hurry owns a broker/dealer subject to a ruling

16   for poor anti-money laundering compliance.

17   The Motion also incorrectly contends that an SEC complaint filed against Alpine

18   confirms the gist of their allegation.  (Doc. 25 at 11:14-28).  Notwithstanding that Ms.

19   Hurry does not co-own Alpine, the SEC's filing of a complaint against Alpine is materially

20   different than a ruling against it.  A complaint merely needs to provide "'a short and plain

21   statement of the claim showing that the pleader is entitled to relief' in order to give the

22   defendant fair notice of what the...claim is and the grounds upon which it rests." *Bell Atl.*

23   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FRCP 8(a)(2)).  A judgment requires

24   a plaintiff to prove by the preponderance of the evidence that a defendant is liable.

25   *Schwalbach v. Jones*, 27 Ariz. 260, 263 (1925).  Defendants' conflation of a complaint

26   filed by the SEC with a judgment is, therefore, improper, false and defamatory, and the

27

28   [2]     Defendants do not contend in their Motion that Defamatory Statement Two or any
     of the False Light Statements are true, thereby conceding their falsity.

1   inaccuracies in the Article are not slight or minor.[3]

2                **b.**      **The SEC Has Not Brought "Several Cases Against**

3                         **Clients Of The Three Hurry-Owned Businesses"**

4       The Article claims that the SEC "has brought several cases against clients of the

5   three Hurry-owned companies."  This statement is false on several levels.

6       First, according to the Article itself, Ms. Hurry only owns or co-owns a single

7   company.

8       Second, Ms. Hurry has never stated that she owns Alpine.  In fact, Exhibit D to the

9   Motion expressly states that Ms. Hurry and her husband "own **or operate**" certain

10   businesses that include Alpine.  (*See* Doc. 25-4, Ex. D at ¶ 2).  Thus, this exhibit lends no

11   support to Defendants' position.

12       Third, Defendants do not deny that the SEC has not brought any action against

13   clients of the so-called third "Hurry-owned company," Cayman Securities Clearing and

14   Trading SECZ, an entity with which Ms. Hurry has no affiliation.

15       The cumulative effect of Defendants' false statements demonstrates that

16   Defendants' errors were neither "slight" nor "minor."  The statement that Ms. Hurry owns

17   three businesses (and that clients of those three businesses have been subject to SEC

18   actions) is simply false.

19

20

21

22

23   [3]     Notably, Defendants have not requested the Court to take judicial notice of an

24   exhibit they submitted to support their prior Rule 12(b)(6) motion—a purported ruling issued by FINRA against SCA that had nothing to do with anti-money laundering.  (*See*

25   Doc. 8-7).  That document actually supports Plaintiffs' position because the Article falsely states that Plaintiffs were sanctioned for anti-money laundering issues, a plainly

26   loaded term implying criminal activity and a conclusive finding of guilt, but the previously proffered document only concerned issues related to inadequate supervision.

27   The sting of money laundering allegations is substantially more severe than allegations related to supervision.  The defense of substantial truth is therefore not available to

28   Defendants.

## C.   The Defamatory Statements And False Light Statements Are Not Protected By The Fair Reporting Privilege

The qualified fair reporting privilege does not attach to Defendants' statements because their statements are false and not "fair or accurate."  *See Green Acres Trust v. London*, 141 Ariz. 609, 618, 688 P.2d 617, 626 (Ariz. 1984) (in banc) (finding no qualified privilege to defame).   "Accuracy means 'substantially correct,' while fair means balanced."  *Id*. (quoting Restatement (Second) of Torts, § 611, cmt. f).  If the publication carries a "greater sting" in defamatory content than the original publication during the public proceeding, then the privilege does not apply.  *Green Acres*, 141 Ariz. at 618, 688 P.2d at 626.

First, it is false for Defendants to publish that regulators have filed enforcement actions against SCA for inadequate anti-money laundering compliance, or that Ms. Hurry co-owns a broker dealer subject to a ruling for anti-money laundering compliance.  (Doc. 25 at 12:20-13:5).  SCA has not been subject to any ruling regarding poor anti-money laundering compliance.   As discussed above, there was no ruling, but a voluntary settlement with FINRA, in which Ms. Hurry and SCA admitted no wrongdoing.  (Doc. 25, Ex. B at pp. 1-2).  It was therefore not fair or accurate for Defendants to publish a statement claiming that Ms. Hurry co-owns a broker dealer subject to a ruling for anti-money laundering compliance. [4]

---

[4]    The single case on which Defendants rely to support their contention that their statement that SCA was subject to "a ruling" carries no greater sting than a voluntary settlement with FINRA in which Ms. Hurry and SCA admitted no wrongdoing, *Colt v. Freedom Commc'ns, Inc.*, 109 Cal. App. 4th 1551 (2003), is inapposite.  First, the ruling was on a motion pursuant to California's anti-SLAPP statute, which is materially different than the standard for a Rule 12(c) motion.  *See Id.* at 1557 ("[The anti-SLAPP statute] places the burden on a plaintiff to establish 'that there is a probability that the plaintiff will prevail on the claim'… 'plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited'…To determine whether plaintiff has met this burden, the test is the same as for a motion for summary judgment.").  Conversely, in ruling on this Motion, all allegations must be accepted as true and extrinsic evidence is generally not permitted (*See infra*, Section II.).  Second, the case applied California's fair report privilege, not the law of Arizona, which applies

1    Second, as discussed above, the SEC has not brought actions against "clients of the

2    three Hurry-owned businesses," because there is only one business owned by Ms. Hurry.

3    Therefore, Defendants' statement that the SEC brought actions against "clients of the three

4    Hurry-owned businesses," falsely and unfairly reports public documents and is not

5    protected by the fair reporting privilege. *See Green Acres Tr.*, 141 Ariz. at 618 ("The report

6    must be fair, and it must be accurate.").

7    Defendants' attempt to escape liability based upon the fair reporting privilege must

8    therefore be denied.[5]

9    ### D.   The Statements Are "Of and Concerning" Plaintiffs

10    Defendants' next argument, that the Defamatory Statements and the False Light

11    Statements do not concern Plaintiffs, is absurd.

12    As an initial matter, Defendants concede that the first and third Defamatory

13    Statements are "of and concerning" SCA.   (*See* Doc. 25 at   3:26-4:2, 14:13-16).

14    Defendants further concede that the first and third False Light Statements concern Ms.

15    Hurry. (*See Id.*).

16    Second, all of the Defamatory Statements and False Light Statements concern Ms.

17    Hurry because the entire Article is devoted to the proposition that Ms. Hurry's application

18    to purchase shares in the Bank of Orrick was denied because of her association with

19    entities subject to enforcement actions.  As the Article states: "Financial regulations have

20    in the past filed multiple enforcement actions against Hurry's companies, raising the

21    prospect that her bank application could receive significant scrutiny."  (Compl. at Ex. 1,

22    ───────────────────

23    here. *Id.* at 1558.  Third, the court's rationale in finding the statement that plaintiff was "caught" was not actionable is inapplicable here.  There, the court found that this

24    statement was true because had plaintiff not been caught, there could have been no consent decree. *Id.* at 1569.  The same cannot be said of "a ruling" and the voluntary

25    settlement with FINRA.  One does not lead to the other and they are materially different—a ruling is a conclusive finding of guilt, whereas the voluntary settlement

26    expressly contained no admission of guilt. (*See* Doc. 25-2, Ex. B at pp. 1-2).

27    [5]    Defendants do not contend that the fair reporting privilege is a defense to False

28    Light Statements One, Three, and Four, thereby conceding that these statements are not protected by the privilege.  (*See* Doc. 25 at 3:18-21).

1   Article).  The Article implies that Ms. Hurry lacks integrity and good character based upon
2   the Defamatory Statements.

3          Third, the fourth False Light Statement—that "Ms. Hurry has been involved in
4   'pump-and-dumps' of penny stocks"—is indisputably of and concerning Ms. Hurry.
5   Defendants' bizarre claim that these pump-and-dump allegations do not concern Ms.
6   Hurry is contradicted by the black letter of the Article, which discusses pump-and-dump
7   schemes in the very same paragraph as Ms. Hurry's suitability and good character.

8          Fourth, even if the Defamatory Statements do not explicitly refer to Ms. Hurry,
9   those statements are "of and about" her because a reader would reasonably conclude that
10  the statements referred to her.  *See* Restatement (Second) Torts § 564 cmt. b (1976).  As
11  one court stated: "The requirement that the libelous statement 'must leave no doubt' as to
12  the person's identity is met by the fact that the statements were specific enough that some
13  readers could precisely identify the person mentioned in the defamatory statement as
14  plaintiff." *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996).  Here, there is no
15  doubt regarding the person implicated by the Defamatory Statements and False Light
16  Statements: Ms. Hurry.  According to the logic of the Article, Ms. Hurry owns three
17  businesses that are involved in money laundering; she lacks integrity and good character;
18  her clients have been sued by the SEC; and her application to buy shares in a bank was
19  therefore rejected by the FDIC two times.  For this same reason, Defamatory Statement
20  Two is "of and concerning" SCA because it is the only company identified in the Article
21  as being owned by Ms. Hurry.  (*See* Compl. at Ex. 1, Article).

22          Fifth, the cases on which Defendants rely are inapposite.  In *Jankovic v. Int'l Crisis
23  Grp.*, 494 F.3d 1080 (D.C. Cir. 2007), the Court held that the principle that "statements
24  which refer to an organization do not implicate its members…**is not absolute**.  If, for
25  example, one person is solely in charge of corporate decision making, an attack on a
26  corporation would vicariously attack the decision maker." *Id*. at 1089 (emphasis added).
27  Based upon the Article's focus on Ms. Hurry, and her purported ownership of the three
28  Hurry-companies, Defendants' attacks on those entities can only be understood as attacks

{00093674;2}

13

1    on Ms. Hurry.

2    In sum, the Defamatory Statements and the False Light Statements are of and

3    concerning the Plaintiffs.

4    **E.**    **The Statements Regarding Ms. Hurry's Character Cast Her In**

5    **A False Light**

6    Defendants' final argument—that the First Amendment somehow protects liability

7    for attacks on Ms. Hurry's integrity and character—is wrong as a matter of law.

8    Defendants' argument is based almost exclusively upon defamation cases, and not

9    false light cases.  The two causes of action are not the same, and the attacks on Ms. Hurry's

10   integrity and character are actionable as False Light Statements.

11   "False light invasion of privacy…protects against the conduct of knowingly or

12   recklessly publishing false information or innuendo that a 'reasonable person' would find

13   'highly offensive.'"  *Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 340 (Ariz.

14   1989).  The Arizona Supreme Court has held that misrepresentations regarding a person's

15   character constitute false light invasions of privacy.  *See Id.* at 341 ("to qualify as a false

16   light invasion of privacy, the publication must involve a major misrepresentation of the

17   **plaintiff's character**, history, activities or beliefs, not merely minor or unimportant

18   inaccuracies") (emphasis added).  Finally, a claim for false light may be based upon untrue

19   publications "or when the publication of true information creates a false implication about

20   the individual.  In the latter type of case, the false innuendo created by the highly offensive

21   presentation of a true fact constitutes the injury."  *Id.*

22   Defendants argue that the Article does not state as an objective fact that Ms. Hurry

23   lacks integrity and good character, and that the Article "merely raises questions" about

24   Ms. Hurry's integrity and good character.  (Doc. 25 at 15:6-16:9).  Nonsense.  The entire

25   thrust of the Article is to call into question Ms. Hurry's integrity and good character.

26   Accordingly, the Article repeatedly associates Ms. Hurry with businesses she does not

27   own, makes false statements regarding proceedings against her and businesses she does

28   not own, implies that Ms. Hurry was involved in "pump-and-dump" schemes, and even

{00093674;2}

14

1    quotes an attorney at a firm in Washington, DC and a business school professor who have

2    never met her.  All of this was done for the singular purpose of trying to establish as fact

3    that Ms. Hurry lacks integrity and good character.  Based upon the Defamatory Statements

4    and the False Light Statements, a reasonable reader can only conclude (as the Article does)

5    that Ms. Hurry lacks integrity and good character.

6          Defendants next argue the False Light Statements are protected because they are

7    couched in generalities about the law and loose conjecture.  (Doc. 25 at 16:10-15).  This

8    argument is disingenuous at best.  The Article is replete with false statements and false

9    innuendo about Ms. Hurry.  The **only** reason the Article discusses purported rulings

10   against "the three Hurry-owned businesses," "the background and integrity of the [bank

11   investor] applicants," enforcement actions against clients of "the three Hurry-owned

12   businesses," and "pump-and-dump" schemes is to create false innuendo regarding Ms.

13   Hurry's character. *Godbehere,* 162 Ariz. at 341.  This is not conjecture, but smears by

14   association and innuendo.

15         Defendants' final argument that statements regarding Ms. Hurry's integrity and

16   good character are not statements of fact capable of being proven true or false is a red

17   herring, because false light statements do not need to be false to be actionable.  (Doc. 25

18   at 16:16-17:3).  *See Godbehere,* 162 Ariz. at 341 ("A false light cause of action may arise

19   when something untrue has been published about an individual, **or** when the publication

20   of true information creates a false implication about the individual.") (emphasis in

21   original).  The tort is established if a defendant knowingly or recklessly published false

22   information or innuendo about the plaintiff that a reasonable person would find highly

23   offensive.  *Hart v. Seven Resorts,* 190 Ariz. 272, 280 (Ariz. Ct. App. 1997).  Indeed, a

24   Court in this district held that describing individuals as "partners in slime," "unethical

25   attorney," an "Internet extortionist," and a "partner in the ripoff report extortion scam"

26   constituted false light invasion of privacy.  *See Xcentric Ventures, LLC v. Stanley*, 2007

27   WL 1795811, at *8 (D. Ariz. June 21, 2007); *see also Douglass v. Hustler Magazine, Inc.*,

28

769 F.2d 1128, 1134 (7th Cir. 1985) (false light may be based upon making individual "seem pathetic or ridiculous[,]…dishonest or incompetent or immoral.").[6]

Based on the foregoing, the False Light Statements against Ms. Hurry are not protected by the First Amendment.[7]

## IV. <u>LEAVE TO AMEND SHOULD BE GRANTED, IF NECESSARY</u>

"The court should freely give leave [to amend] when justice so requires." FRCP 15(a)(2); *First Franklin Fin. Corp. v. Dreamscape Mortg., L.L.C.*, 2008 U.S. Dist. LEXIS 43176, at *2 (D. Ariz. May 29, 2008) (acknowledging that Rule 15 is very liberal and should be granted when justice so requires). This phrase is interpreted as an affirmation of the liberal approach to pleading taken by the modern rules (*see e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962)) and as an encouragement to judges to decide a plaintiff's claims on the merits whenever possible. *See Conley v. Gibson*, 355 U.S. 41, 48 (1957); *see also, Loveland v. Valencia*, 2014 U.S. Dist. LEXIS 176163, at *5 (D. Ariz. Dec. 19, 2014) (finding no undue delay, bad faith or dilatory motive on the plaintiffs' part and allowing amendment to complaint under the liberal standard of Rule 15); *Biggs v. Town of Gilbert*,

---

[6]   As noted above, the vast majority of the cases cited by Defendants in support of their contention that the First Amendment protects against liability for the False Light Statements involve claims for defamation rather than for false light. The few cases that do include claims for false light do not support Defendants' contention. In *Gardner v. Martino*, 563 F.3d 981 (9th Cir. 2009), the Court's analysis was limited to the plaintiffs' defamation claim. In *Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995), the court found that the statements were not actionable because they were "personal viewpoints, not assertions of objective fact." *Id.* at 1153. Here, the Article was not the subjective viewpoint of the author, it is was presented as objective fact for the purpose of establishing that Ms. Hurry lacks integrity and good character. Similarly, in *Hosszu v. Barrett*, 202 F. Supp. 3d 1101 (D. Ariz. 2016), the court also held the statements at issue to be "personal opinion," "suspicions," and "commentary," which is not the case here. *Id.* at 1106-1108. In *Hinchey v. Horne*, 2013 WL 4543994 (D. Ariz. Aug. 28, 2013), the court dismissed the plaintiff's false light claim because she was a public officer and the statements related to the performance of her official duties, which is not at issue here. *Id.* at *11.

[7]   Defendants do not contend that the First Amendment is a defense to False Light Statements Two and Four or any of the Defamatory Statements, thereby conceding that these statements are not subject to this defense. (*See* Doc. 25 at 4:3-7, 17:4-6).

1   2011 WL 1793252, at *5 (D. Ariz. May 11, 2011) (granting plaintiff leave to amend rather

2   than granting motion for judgment on the pleadings because "[t]he Court should not grant

3   judgment on the pleadings unless it is beyond doubt that the plaintiff can prove no set of

4   facts in support of his claim which would entitle him to relief.") (internal quotations

5   omitted).

6        If the Court should conclude that Plaintiffs have not adequately pleaded any of their

7   claims, Plaintiffs respectfully request that leave to amend should be granted to cure any

8   deficiencies.

9   **V.     CONCLUSION**

10       For all of the reasons set forth above, the Court should deny the Motion.

11

12       RESPECTFULLY SUBMITTED this 10th day of August, 2018.

13
                                          HARDER LLP
14
                                          By   /s/ Jordan Susman
15                                           Charles J. Harder
                                             Jordan Susman
16                                           Dilan Esper
                                             HARDER LLP
17                                           132 S. Rodeo Drive, Fourth Floor
                                             Beverly Hills, California 90212
18
                                             – and –
19
                                             Monica A. Limón-Wynn
20                                           LIMÓN-WYNN LAW, PLLC
                                             Tempe City Center
21                                           1400 East Southern Avenue, Suite 915
                                             Tempe, Arizona  85282-8008
22
                                             Attorneys for Plaintiffs Justine Hurry and
23                                           Scottsdale Capital Advisors Corp.

24

25

26

27

28

{00093674;2}

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing, to:

C. Bradley Vynalek
Lauren Elliott Stine
Kyle T. Orne
QUARLES & BRADY LLP
Renaissance One
Two North Central Ave.
Phoenix, Arizona 85004
brad.vynalek@quarles.com
lauren.stine@quarles.com
kyle.orne@quarles.com
Attorneys for Defendants S&P Global Inc.,
S&P Global Market Intelligence Inc.,
Kiah Lau Haslett and Zack Fox

Duffy Carolan
JASSY VICK CAROLAN LLP
601 Montgomery Street, Suite 850
San Francisco, California 94111
dcarolan@jassyvick.com
Attorneys for Defendants S&P Global Inc.,
S&P Global Market Intelligence Inc.,
Kiah Lau Haslett and Zack Fox

Jean-Paul Jassy
Kevin L. Vick
JASSY VICK CAROLAN LLP
800 Wilshire Blvd., Suite 800
Los Angeles, California 90017
jpjassy@jassyvick.com
kvick@jassyvick.com
Attorneys for Defendants S&P Global Inc.,
S&P Global Market Intelligence Inc.,
Kiah Lau Haslett and Zack Fox

/s/ Marcie Moreno
An employee of Harder LLP

{00093674;2}

1