**QUARLES & BRADLEY LLP**
C. Bradley Vynalek (#020051)
Lauren Elliott Stine (#025083)
Kyle T. Orne (#032438)
Renaissance One Two North Central Ave.
Phoenix, AZ 85004-2391
Tel: (602)229-5261
brad.vynalek@quarles.com
lauren.stine@quarles.com
kyle.orne@quarles.com

**JASSY VICK CAROLAN LLP**
Duffy Carolan (Cal. Bar. No. 154988) (*Pro Hac Vice*)
601 Montgomery Street, Suite 850
San Francisco, California  94111
Tel: (415) 539-3399
dcarolan@jassyvick.com

Jean-Paul Jassy (Cal. Bar No. 205513) (*Pro Hac Vice*)
Kevin L. Vick (Cal. Bar No. 220738) (*Pro Hac Vice*)
800 Wilshire Blvd., Suite 800
Los Angeles, California 90017
Tel: (310) 870-7048
jpjassy@jassyvick.com
kvick@jassyvick.com

Attorneys for Defendants
S&P Global Inc., S&P Global Market Intelligence Inc.,
Kiah Lau Haslet and Zack Fox

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Justine Hurry, an individual; Scottsdale Capita Advisors Corp., an Arizona corporation<br><br>Plaintiffs,<br><br>v.<br><br>S&P Global, Inc., a New York corporation; S&P Global Market Intelligence, Inc., a New York corporation; Kiah Lau Haslett, an individual; Zach Fox, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.  2:18-cv-01105-PHX-JAT<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Defendants S&P Global Inc., S&P Global Market Intelligence Inc., Kiah Haslett, and Zach Fox (collectively "S&P Global") hereby submit this reply memorandum in support of their Rule 12(c) Motion for Judgment on the Pleadings (Dkt. 25).

## I. INTRODUCTION

S&P Global demonstrated in the Motion that Plaintiffs' claims were barred because (1) judicially noticeable documents demonstrate that Defamatory Statements One and Two are substantially true; (2) judicially noticeable documents demonstrate that all of the Defamatory Statements and False Light Statement Two are protected by the fair report privilege; (3) none of the Defamatory Statements are "of and concerning" Hurry and Defamatory Statement Two and False Light Statements Two and Four are not "of and concerning" either Plaintiff; and (4) False Light Statements One and Two are pure "opinion" protected by the First Amendment.  None of the arguments offered by Plaintiffs in response save their claims.

Substantial Truth.  The substantial truth and the fair report privilege exist to provide breathing space for speech. They do not turn on thin, technical inaccuracies.  Yet thin, technical inaccuracies are effectively all that Plaintiffs offer in response.  Indeed, faced with their own regulatory history and judicial admissions, Plaintiffs quibble over whether something was called an "order" or a "contested ruling," and whether Ms. Hurry owns/controls "two" or "three" companies whose clients have been the subject of enforcement actions.  These superficial challenges are not sufficient to stave off dismissal.

First Amendment.  The First Amendment protections for "pure" opinion (statements that are not capable of being proven false) apply regardless of the label affixed to the claim. Because integrity and character are not subject to any measurable standard allowing for proof of falsity, Ms. Hurry's claims predicated on this alleged innuendo fail.

"Of and Concerning".  That S&P Global dared to report on Ms. Hurry's application to own a bank and raise questions about how Plaintiffs' regulatory history would factor into the FDIC's review does not mean that every statement in the article is about Plaintiffs. Statements about SCA are not about Ms. Hurry, and statements about clients of SCA are not

2

about either Plaintiff. The "of and concerning" element is a constitutional limitation on all claims involving injurious speech, and those limitations apply here.

At bottom, the Court should not wait to resolve Plaintiffs' claims where official records—that are properly subject to judicial notice—show that none of the statements are actionable. That is especially true where, as here, resolution would help guard against the chilling effect defamation actions have on important news reporting.

## II. LEGAL ARGUMENT

### A. The FINRA Order and Court Records are Subject to Judicial Notice.

There can be no doubt that the 2011 FINRA Consent Order, the 2017 SEC Complaint filed in the United States District Court for the Southern District of New York, and a 2014 Complaint filed by Plaintiff Hurry in this Court are all subject to judicial notice. See Dreiling v. Am. Exp. Co., 458 F.3d 942, 946, n.2 (9th Cir. 2006); U.S. v. Town of Colorado City, 2013 WL 11826544, at *3, n. 17 (D. Ariz. June 6, 2013); U.S. v. Grace Xunmei Li, 2013 WL 147803, at *3 (D. Ariz. Jan. 14, 2013). All of those documents are "not subject to reasonable dispute," because their accuracy can be "readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Likely for those reasons, Plaintiffs do not even attempt to argue that the documents themselves are not subject to judicial notice. Instead, Plaintiffs claim, for the first time, that the documents "have not been authenticated." [Dkt. 27 at 4-5.] However, it is well-established that absent a challenge to the authenticity of the documents, all of which are public records, the Court can (and should) presume their authenticity and trustworthiness. See Johnson v. City of Pleasanton, 982 F.2d 350, 352 (9th Cir. 1992) (recognizing that public records may be "presumed authentic and trustworthy," shifting the "burden of establishing a basis for exclusion . . . on the opponent of the evidence"). Critically, Plaintiffs do not contest the authenticity of the documents -- nor could they, especially since they are parties to two of the proceedings. As such, this Court can and should presume that the documents are authentic.

To the extent Plaintiffs' challenge is really one of foundation that argument also fails.

The documents are official records. Two were pulled from the judicially-maintained PACER court filing system, the third from FINRA's public website. They are what S&P Global claims they are, and Plaintiffs do not argue otherwise.[1]

Finally, contrary to Plaintiffs' contention, S&P Global has not asked the Court to accept the truth of the allegations or findings against SCA, Hurry and Alpine contained in the underlying proceedings. S&P has simply asked the Court to recognize the fact that the documents exist and that findings or allegations were made (e.g., the existence of the 2011 FINRA Consent Order and the existence of the findings against Plaintiffs for inadequate anti-money compliance contained therein). That is exactly what judicial notice is for. See, e.g., Lee v. City of L.A., 250 F.3d 668, 690 (9th Cir. 2001) (holding that courts may take judicial notice of court records "for the existence of the [record], which is not subject to reasonable dispute over its authenticity").

### B.    Defamatory Statements One and Three Are Substantially Truth.

Plaintiffs contend that factual disputes preclude a determination on the substantial truth of the published statements. [Dkt. 27 at 8.] They argue that the 2011 FINRA Consent Order was not an "enforcement proceeding," that it was incorrect to refer to it as a "ruling," and that financial regulators have not filed enforcement actions against clients of three Hurry-owned companies, only at most two. However, under the fair report privilege, "it is not necessary that [the article] be exact in every immaterial detail or that it conform to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings." Sallomi v. Phoenix Newspapers, Inc., 771 P.2d 469, 472 (Ariz. Ct. App. 1989). Further, "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" Crane v. Ariz. Republic, 972 F.2d 1511, 1519 (9th Cir. 1992). As such, Plaintiffs' arguments do not change the fact that Defamatory Statements One and Three regarding anti-money laundering compliance are substantially true.

---

[1] Nevertheless, to moot the issue completely, S&P Global attaches hereto as Exhibit 1 the declaration of counsel establishing the documents authenticity. Fed. R. Evid. 901(b)(7).

4

1    First, Plaintiffs do not dispute, nor can they, that the 2011 FINRA Consent Order contains findings against SCA and Justine Hurry for poor anti-money laundering compliance.[2]  [Dkt. 25-2 (Ex. B) at 3 & 21-22.]  It is these findings that form the gist or sting of the published statements underlying Defamatory Statements One and Two, not whether FINRA's action was or was not an "enforcement proceeding," or whether it was accurate to call the Consent Order a "ruling."  These latter distinctions, upon which Plaintiffs' entire argument relies, are non-actionable as a matter of law.

Second, technical precision aside, it is correct that the 2011 FINRA proceeding was an enforcement action.  The order itself makes clear that FINRA's "Department of Enforcement" initiated the proceeding by filing a complaint against plaintiffs. [Dkt. 25-2 (Ex. B) at 1].  Thus, it is technically correct that FINRA filed an enforcement action against SCA (and Ms. Hurry) for poor anti-money laundering compliance.  [Cmpt., ¶ 35c.]

Third, that this FINRA proceeding ended in a settlement, with Ms. Hurry and SCA consenting to the entry of findings and sanctions [see Dkt. 25-2 (Ex. B) at 2], as opposed to a ruling entered upon a contested proceeding, does not alter the gist or sting of the published statements.  See Doe v. Mahoney, 2018 WL 710385, ¶ 20 (Ariz. Ct. App. Feb. 6, 2018) (holding as a matter of law that "sting of violating anti-fraud provisions of securities laws in three states rather than two is inconsequential," where sting was fraudulent practices); see also Fendler v. Phoenix Newspapers, Inc., 636 P.2d 1257, 1261-62 (Ariz. Ct. App. 1981) (holding as substantially true article incorrectly stating plaintiff was doing "four-to-five years in prison" when he had been released on bond pending appeal since gist was that he was found guilty of a crime).  If anything, consenting to a set of facts and rule violations, including anti-money laundering compliance rules, carries a greater sting than having a ruling entered following a contested proceeding because the latter remains contested and is subject to appeal.

**C.   The Article's Description of Official Proceedings Is Privileged.**

A privileged report need only be a "substantially correct account of the proceedings."

---

[2] Plaintiffs now concede that Ms. Hurry owns or co-owns SCA.  [Dkt. 27 at 10:6-7.]

5

Sallomi, 771 P.2d at 472.  "[A] court must determine whether the report of the public proceeding carries a 'greater sting' in defamatory content than the original publication during the proceedings."  Green Acres Trust v. London, 688 P.2d 617, 619 (Ariz. 1984). Here too Plaintiffs' argument rests on negligible (and non-actionable) differences.

### 1. Defamatory Statements One and Two.

In addressing the application of the fair report privilege to Defamatory Statement One and Two, Plaintiffs argue only that it was inaccurate and unfair to characterize the 2011 FINRA Consent Order as a ruling.  [Dkt. 27 at 11:14-19.]  As with their arguments under the substantial truth doctrine, no argument is made (nor could be made) that S&P Global mischaracterized the substance of the findings against SCA.

Stating that SCA was subject to a "ruling" for poor anti-money laundering compliance when the truth was that Plaintiffs entered into an order actually consenting to such findings carries no greater sting.  That Plaintiffs admitted no wrongdoing in entering into the consent order does not alter this conclusion.  Plaintiffs' attempt to distinguish Colt v. Freedom Commcns, Inc., on this point is disingenuous at best.  [Dkt. 27.]  There, as here, the plaintiff complained that news accounts about a consent decree he voluntarily entered into with the SEC implied guilt.  Colt, 109 Cal. App. 4th 1551, 1554-56, 1558 (2003). Despite the plaintiff's argument that this characterization was inaccurate because he settled with the SEC without admitting wrongdoing, the court held the articles were protected under the fair report privilege and the First Amendment as they "fairly described the gist of plaintiffs' misconduct."  Id. at 1560.  Colt did not turn on which party carried the burden of proof, or the particular stage of the proceedings, as Plaintiffs suggest.  Id. at 1558.

In short, the published statements concerning a ruling (or enforcement action) against SCA contain a substantially correct account of the 2011 FINRA Consent Order, and thus are independently protected under the fair report privilege.

### 2. Defamatory Statement Two and False Light Statement Two.

Plaintiffs contend that it was false to say that the SEC has brought cases against

6

clients of three Hurry-owned companies, because she only owns one company, SCA, [3] and her judicial admission in 14-cv-02490 [Dkt. 25-4, Ex. D at ¶ 2] shows only that she and her husband "own **or operate**" a second company, Alpine. Dkt. 27 at 10. Thus, Plaintiffs argument boils down to a contention that the distinction between owning or operating two as opposed to three companies, whose clients have been the subject of SEC enforcement actions, is somehow actionable. It is not.

First, it is important to note that the article does not state that Justine Hurry personally owns three companies whose clients have been the subject of SEC complaints, as Plaintiffs contend. Rather, the article carefully lays out Justine Hurry's and John Hurry's separate ownership interests, before using the shorthand reference "Hurry-owned companies." [Cmpt. Ex. 1.] This type of shorthand reference is typical and not reasonably subject to a defamatory interpretation. See, e.g., Tennenbaum v. Arizona City Sanitary Dist., 2013 WL 2422684, *11 (D. Ariz. June 3, 2013) (statements that company owner and his sons acted when in truth they acted through a company held to be nonactionable, slight inaccuracies).

Second, even accepting Plaintiffs' interpretation, whether Ms. Hurry's interests extend to two as opposed to three companies whose clients have been the subject of enforcement actions is immaterial. The gist or sting of the published statement is no different. See Mahoney, 2018 WL 710385, ¶ 20 (finding substantially true statement that three different states found securities offered by parent company to be illegal where one state's order was actually entered against wholly owned subsidiary); Sallomi, 771 P.2d at 473 (articles stating son owned and operated lodge, described as a hangout for narcotics dealers, where booking slip showed only that he was the lodge's manager held substantially correct reading of public record).

Third, whether Ms. Hurry owns **or controls** those two companies is not an actionable distinction, as both statements carry the same gist or sting. Indeed, "controlling" the daily operations of a securities firm arguably places Ms. Hurry closer to the firm's activities in connection with its clients than mere ownership.

---

[3] Hurry concedes she owns or co-owns SCA. Dkt. 27 at 10:6-7.

7

Because the First Amendment and common law demand breathing space in reporting on official proceedings, each of Plaintiffs' defamation claims and False Light Statement Two should be dismissed.

### D. The Published Statements Are Not "Of and Concerning" Plaintiffs.

Plaintiffs argue that because the Article is generally about Plaintiffs, then every statement therein is "of and concerning" Plaintiffs. However, in determining whether the complained of statements are "of and concerning" Plaintiffs, the Court cannot ignore the actual language in the Article or apply Plaintiffs' tortured reading. That the article is about Ms. Hurry's bank application does not mean that every allegedly defamatory statement in the article is an accusation about her. See, e.g., Reynolds v. Reynolds, 294 P.3d 151, 156 (Ariz. Ct. App. 2013) (upholding dismissal at pleading stage where article could not reasonably be read as implying daughter's responsibility for not having end-of-life plan for mother despite references to daughter's actions in encouraging her placement in facility).

For example, Defamatory Statement Two and related False Light Statements Two and Four concerning pump and dump schemes are clearly about <u>clients</u> of the Hurry-owned companies, not Hurry (or SCA). The article negates any contrary implication when it states that Ms. Hurry was not personally responsible for the alleged wrongdoing. [Cmpt., Ex. 1.] Similarly, Defamatory Statements One and Three concern SCA, not Ms. Hurry personally. See Earle v. Sedona Financial Center LLC, 2017 WL 4129314, at *2 ("The mere (undisputed) observation that a person's business partner is suspected of criminal activity is insufficient to create an actionable assertion of fact that the person himself was involved in malfeasance.").

### E. The First Amendment Precludes Liability For the Articles' Reference to "Integrity" and "Character" – False Light Statements One and Three.

Plaintiffs claim that the Articles' references to Plaintiff Hurry's "integrity" and "character" are actionable as false light statements, whether or not they are false and whether or not they state actual facts. But that is not the state of the law.

8

First, the United States Supreme Court, the Ninth Circuit, and this Court all recognize that where the gravamen of a claim is an injurious falsehood, protections afforded speech under the First Amendment apply regardless of the label affixed to the claim. Hustler Magazine v. Falwell, 485 U.S. 46, 50 (1988) (holding First Amendment precluded recovery for emotional distress for advertisement parody that "could not reasonably have been interpreted as stating actual facts about the public figure involved"); Partington v. Bugliosi, 56 F.3d 1147, 1160, 1153, 1156 (9th Cir. 1995) (holding defamation and false light statements, as well as claimed implication arising from statements, were non-actionable under Ninth Circuit's three-part test because they did not imply a false assertion of objective fact); Hosszu v. Barrett, 202 F. Supp. 3d 1101, 1108, 1106 (D. Ariz. 2016) (same).

To this end, the Ninth Circuit has explicitly recognized that "[f]alse light, like defamation, requires at least an implicit false statement of objective fact." Flowers v. Caville, 310 F.3d 1118, 1132 (9th Cir. 2002) (citing Restatement (Second) of Torts § 652E(b) (1977)); see also Dyer v. Dirty World, LLC, 2011 WL 2173900, * 4 (D. Ariz. June 2, 2011) (same)). The cases Plaintiffs cite do not support a contrary conclusion.

The court in Godbehere v. Phoenix Newspapers, Inc., 783 P.2d 781, 787 (Ariz. 1989), actually recognized that for true information to be actionable it must "create a false implication about the individual." There was no contention in Xcentric Ventures, LLC v. Stanley, 2007 WL 1795811, at * 3 (D. Ariz. June 21, 2007)—a preliminary injunction case—that the published statements were not susceptible to being proven true or false, nor did the case involve a false innuendo claim. The published statements instead related to alleged acts of extortion and claims that the plaintiff was a "wanted criminal." Id. There is no comparison here where the alleged implication pertains to one's integrity and character, which have no measurable standard to determine the truth.[4]

The other case Plaintiffs cite, Douglass v. Hustler Magazine, Inc., 769 F.2d 1128 (7th

---

[4] See Prostrollo, 2018 WL 501414, at * 6 (holding that claims that one was privy to "behaviors that are unethical" are incapable of being objectively proven "because there is no identifiable standard from which a fact finder can assess such behavior"); Wartell v. Lee, 47 N.E.3d 381, 384-87 (Ind. Ct. App. 2015) (statements that plaintiff "lacked integrity" and whose "character is at issue" held too vague to be actionable).

Cir. 1985), actually supports S&P Global's position. There, a photograph of an actress who posed nude for Playboy magazine was published in Hustler magazine with text making it appear as though she voluntarily posed for Hustler. The specific question addressed by the court was "in what if any sense the light could have been found to be a false one." Id. at 1134 (emphasis added). Plaintiff's degradation injury stemmed from the false portrayal of plaintiff as having "voluntarily posing nude for Hustler," something she did not do. Id. at 1137. There is no comparison to implying someone lacks integrity or good character, which unlike the act of posing nude for Hustler, can't be objectively judged true or false.

In short, Plaintiffs' contention that false light implication need not be false to be actionable [Dkt. 27 at 14:18-21] is flatly wrong.

Second, Plaintiffs cannot legitimately dispute that "words must be capable of being reasonably interpreted as stating actual facts" to be actionable. Turner v. Devlin, 848 P.2d 286, 292 (Ariz. 1993). The Ninth Circuit applies a three-pronged analysis to determine whether a statement implies an assertion of objection fact: (1) the general context in which the statement was made, (2) the specific context of the statement, and (3) whether the statement is susceptible of being proved true or false. Gardner v. Martino, 563 F.3d 981, 987 (9th Cir. 2009). Each of the three prongs weighs in S&P Global's favor.

Under the first prong—the general context in which the statements were made— Plaintiffs make no attempt to distinguish the numerous cases cited by S&P Global holding that speech that merely raises questions about possible outcomes, predicts the future, raises suspicions, or constitutes conjecture is non-actionable. [Dkt. 25 at 15-16 (citing cases).] As explained in Partington, "when an 'answer [is] within the wide range of possibilities, [it] is precisely [when] we need and must permit a free press to ask the question." 56 F.3d at 1154. Plaintiffs avoid any reference to the actual impetus of the article that necessarily informs its general tenor: namely, Ms. Hurry's application to become an owner of a financial institution, the factors considered by regulators in reviewing such applications, and the broad question raised by the article—"[w]hether the histories of Scottsdale Capital and Alpine Securities will affect Justine Hurry's application to buy Bank of Orrick …" [Cmpt., Ex. 1.]

Instead, Plaintiffs argue that the "singular purpose" is to "establish as fact that Ms. Hurry lacks integrity and good character." [Dkt. 27 at 15.] This is not how courts approach the analysis on prong one. Instead, it is a bare attempt to get the Court to adopt a tortured reading of the article, which it cannot do. See Partington, 56 F.3d at 1157 ("The language cannot be tortured to 'make that certain which is in fact uncertain.'").

Under the second prong—the specific context—Plaintiffs again ignore the actual language in the Article which signals to readers that the author was merely questioning how SEC and FINRA enforcement actions would affect the FDIC's decision on Ms. Hurry's application. The Article says that the FDIC declined to state why it returned Ms. Hurry's application and a returned application is neither accepted nor denied. It includes cues such as use of the term "raising the prospect" in reference to whether Ms. Hurry's application would receive heightened scrutiny, and multiple statements explaining that Ms. Hurry was not accused of wrongdoing or even named in the SEC or FINRA actions with the largest fines, thus negating any contrary implication. [Cmpt., Ex. 1.] Readers also were expressly told that one of the experts was talking "generally about the Bank Control Act…not specifically about Ms. Hurry's application." And the other expert's use of exaggerated expressions as a rhetorical tool signals to readers that he was speculating about how regulators might react to the SEC actions. Here again, Plaintiffs fail to focus on the actual information readers would understand from a reasonable reading of the article and the language used therein. [Dkt. 27 at 15:6-14.]

As for the third-prong—whether the statements (or innuendo) is susceptible to being proved true or false—Plaintiffs fail to address it at all. By focusing entirely on an erroneous legal argument—that this constitutional protection does not apply in false light innuendo cases—they necessarily concede that any innuendo regarding a lack of integrity or good character is not capable of being proven false.

### III. CONCLUSION

For all these reasons, and those more fully set forth in S&P Global's moving papers, this motion for judgment on the pleadings should be granted without leave to amend.

| | |
|---|---|
| Dated: August 17, 2018 | JASSY VICK CAROLAN LLP |
| | /s/ *Duffy Carolan* |
| | Duffy Carolan |
| | Jean-Paul Jassy |
| | Kevin Vick |
| | |
| | QUARLES & BRADY LLP |
| | C. Bradley Vynalek |
| | Lauren Elliott Stine |
| | Kyle T. Orne |
| | Attorneys for Defendants S&P Global Inc., S&P Global Market Intelligence Inc., Kiah Lau Haslett and Zach Fox |

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Monica Limón-Wynn
Limón-Wynn Law, PLLC
1400 East South Avenue, Suite 915
Tempe, Arizona 85282-8008
Milmon-wynn@mlwlawaz.com

Charles J. Harder (Pro Hac Vice)
Jordan Susman (Pro Hac Vice)
Harder LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, CA 90067
CHarder@harderllp.com
JSusman@harderllp.com

Attorneys for Plaintiffs

Dated: August 17, 2018          /s/ *Duffy Carolan*